[Crim. No. 24172. July 25, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
OLUFEMI BABATUNDE OGUNMOLA, Defendant and Appellant.

**COUNSEL**

Weitzman & Re, Weitzman, Fidler & Re, Howard L. Weitzman, Donald M. Re and Gina Putkoski for Defendant and Appellant.

Dennis A. Fischer and Kathleen C. Caverly as Amici Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gary R. Hahn and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KAUS, J.—

I

Defendant, a board-certified gynecologist and obstetrician, was charged with and convicted of raping two patients—DC and BK—while they were "unconscious of the nature of the act." (Pen. Code, § 261, subd. (4).) At the trial the prosecution was permitted to introduce evidence of similar incidents with two other patients—TS and EG. Charges involving those patients had previously been tried and had resulted in acquittals.[1] Defendant contends that the introduction of this evidence was prejudicial error under *People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1]. We agree and reverse the judgment.

II

The testimony of the four principal witnesses was quite similar. In sum, each testified to facts from which it could be inferred that defendant inserted his penis into her vagina while conducting a bimanual examination of her pelvic organs. Each victim was lying on her back on the examination table with her knees bent and her feet in stirrups. A paper drape covered her knees, blocking her vision of all but defendant's head and chest. Each testified that the nurse left the room after defendant had obtained a pap smear and before the bimanual examination.[2]

Defendant testified and denied wrongdoing with respect to any of the four victims. He suggested that they mistook the normal insertion of two fingers during the bimanual examination for sexual penetration. This theory was supported by expert testimony. Defendant and his nurses testified that on

---

[1]The jury was, of course, told of the acquittals. (*People* v. *Griffin* (1967) 66 Cal.2d 459, 464-466 [58 Cal.Rptr. 107, 426 P.2d 507].) On appeal defendant asserts that constitutional considerations (cf. *Ashe* v. *Swenson* (1970) 397 U.S. 436 [25 L.Ed.2d 469, 90 S.Ct. 1189]) prohibited the prosecution's use of criminal conduct of which he had been acquitted. Since we have reached the conclusion that the common law of evidence as enacted by our Legislature forbade the use of the incidents involving TS and EG, we need not decide the constitutional issue.

[2]During a bimanual examination, the doctor inserts two gloved fingers into the patient's vagina while pressing on the patient's abdomen with his other hand. It is standard practice for the doctor to place a completely clear, water soluble lubricant—such as K-Y jelly which defendant testified he used—on his gloved fingers prior to insertion. The doctor checks the right ovary, the uterus, and the left ovary, moving his fingers to those three positions in the vagina while pressing on the right, middle, and then left side of the abdomen. During this procedure, the doctor is also able to check the cervix and the fallopian tubes. The purpose of such an examination is to assess whether any abnormality or infection exists.

three of the four occasions the nurses did not leave the room during the pelvic examination.[3]

## III

The question of the admissibility of the evidence concerning TS and EG was argued and ruled on before the opening statements. Having in mind that *People* v. *Thomas* (1978) 20 Cal.3d 457 [143 Cal.Rptr. 215, 573 P.2d 433], which we disapproved in *People* v. *Tassell, supra,* 36 Cal.3d 77, probably made it futile for counsel to object on the basis of section 1101 of the Evidence Code—after all the uncharged offenses were not too remote and were similar to the charged offenses—the defense relied principally on section 352, arguing that the prejudicial effect outweighed the probative value.[4] The court ruled that it could not "conceive of a case where the probative value would be any greater," and that it "far outweighs any prejudicial value [*sic*]." Eventually the jury was instructed that it could consider the evidence "only for the limited purpose of determining if it tends to show a characteristic method, plan or scheme in the commission of acts similar to the method, plan or scheme used in the commission of the offenses in this case which would further tend to corroborate the testimony of the prosecuting witnesses."

■ While the trial court's ruling was probably justified by *People* v. *Thomas, supra,* 20 Cal.3d 457, at this point even the People concede that since neither identity nor intent[5] was in issue and the evidence was not admissible solely to corroborate DC and BK, the announced basis for admitting the testimony of TS and EG was error. (*People* v. *Tassell, supra,* 36 Cal.3d at pp. 83-89.) They claim however that the evidence was not prejudicial, since it would have been independently admissible for the purpose of establishing defendant's opportunity to achieve penetration, a necessary element of the charged offenses. To support this novel theory, the People rely on a passage in defense counsel's opening statement in which he pointed to a step at the foot of the doctor's examining table which—

---

[3]Both defendant and the nurse then on duty agreed that she had left the room during the pelvic examination of TS. The nurse who testified that she was present during the examination of DC was defendant's wife.

[4]In view of the law as interpreted by *Thomas,* the defense's failure to rely on section 1101 is no bar to consideration of the applicability of that section on appeal. (*People* v. *De Santiago* (1969) 71 Cal.2d 18, 22-23 [76 Cal.Rptr. 809, 453 P.2d 353]; *People* v. *Kitchens* (1956) 46 Cal.2d 260, 263 [294 P.2d 17].) In any event, the rule stated in section 1101 is merely a concrete application of the general principle embodied in section 352.

[5]In *Tassell,* a case of forcible rape, Justices Richardson and Reynoso dissented on the basis that the evidence of other forcible rapes was relevant on the issue of intent.

unless removed with much noise—supposedly inhibited contact between defendant's and the victims' sexual organs.[6]

With all respect, the People's "inevitable admissibility" theory will not work. We can disregard that it was never voiced below, that the trial court ruled on the admissibility of the evidence before defense counsel ever mentioned the steps,[7] and that the jury was obviously never instructed to limit its consideration of the evidence to the mechanical issue raised by the defense. The conclusive answer is simply that if it was genuinely desired to prove that the step did not make sexual contact impossible, there were several demonstrations by which the People could have proved their point directly with reasonable delicacy and without lurid testimony from alleged victims of uncharged rapes.

## IV

We must face the fact that the only genuine issue before us is whether the erroneously admitted evidence was prejudicial. This question must, of course, be decided against the background of the entire case as presented by both sides. It would needlessly burden the record if we recited in detail the various side issues which the parties assiduously explored, the expert testimony, the impeachment—successful and not so successful—of the complaining witnesses or if we took meticulous note of the many intangibles which can determine the outcome of any litigation. None of these factors is of concrete assistance in assessing prejudice from erroneously admitted evidence. In its crudest form, the case pitted the credibility of the complaining witnesses against that of defendant and his nurses. The fact that the two complaining witnesses were impermissibly corroborated by two others, had to carry much weight with the jury. Finally, we simply cannot ignore the one fact which proves the effect of the error with seeming laboratory precision: that when defendant was charged only with two similar offenses allegedly committed against TS and EG, he was acquitted, but when the jury learned of four similar incidents he was convicted. While this fact is, of course, far from conclusive, it is a great deal more probative and convincing than the usual tools given to appellate courts on the issue of preju-

[6]"There is a step that goes to this table. It opens up, and it locks into position. And you can't unlock it and push it in without it making a tremendous grating noise. And that was utilized by the young women to climb up onto the table. [¶] We hope to prove to you that this step was out and that any man of normal size standing at the foot of this table with the step out six to ten to twelve inches is going to be hard pressed to stand at the foot of the table with the step out six to ten to fourteen inches—if you follow where I am going—and penetrate any woman on that table. We will prove that to you."

[7]It seems a safe guess that if the cost of excluding the evidence from TS and EG was the abandonment of the "step argument," the defense would cheerfully have paid the price.

dice. We therefore find that the error was prejudicial. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

The judgment is reversed.

Bird, C. J., Mosk, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

**LUCAS, J.**—I concur in the judgment, but solely under the compulsion of *People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1], a case which I believe was incorrectly decided and should be reconsidered and overruled.

As the dissent by Justice Richardson in *Tassell* explained, the fact that the defendant had committed[1] several strikingly similar sex offenses in the recent past is highly probative of defendant's intent, plan or scheme to commit such offenses, including the charged offense. The jury is entitled to know these probative, relevant facts.

Although the majority herein does not mention it, Proposition 8 seemingly has eliminated *Tassell's* absolute barrier to admissibility of relevant prior criminal offenses. (See Cal. Const., art. I, § 28, subd. (d); cf. *People* v. *Castro* (1985) 38 Cal.3d 301, 309-313 [211 Cal.Rptr. 719, 696 P.2d 111].) The present offenses, however, occurred prior to the adoption of Proposition 8 and, accordingly, *Tassell* unfortunately controls disposition of the present case.

---

[1]Like the majority, I do not reach the further question of the effect of defendant's *acquittal* of the prior offenses on the admissibility of the underlying evidence.