Filed 1/15/14  P. v. Richson CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SEAN JEFFREY RICHSON,<br><br>Defendant and Appellant. | F064839<br><br>(Super. Ct. No. 11CM7138)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kings County.  Steven D. Barnes and James LaPorte, Judges.

Peter Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and John A. Bachman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Sean Jeffrey Richson was convicted by a jury of battery by a prisoner upon a noninmate. (Pen. Code,[1] § 4501.5.) The jury also found true the allegations that defendant suffered two prior convictions within the meaning of the three strikes law. (§§ 667, subds. (b)-(i), 1170.12, subds (a)-(d).) After his motion made pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*) was denied, the trial court sentenced defendant to a total term of 25 years to life.

On appeal, defendant asks this court to review the trial court's ruling on his motion made under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), makes several claims of evidentiary errors, and argues the trial court abused its discretion by failing to strike one of his prior convictions. We find these claims without merit and affirm the judgment.

## FACTS

Correctional Lieutenant Johnny Rivero was working at the Corcoran State Prison Substance Abuse Treatment Facility on October 6, 2010. He had recently transferred to this facility, and had just begun working in Facility C, where defendant was housed. Rivero was responsible for training other officers, providing leadership, and ensuring the officers were following proper protocol. During his shift, Rivero was advised by Correctional Officer Christopher Cribbs that some inmates were failing to follow procedure by refusing to stand during the inmate count. Cribbs intended to file a formal rules violation against the inmates; however, Rivero stated he would handle the matter directly with the inmate by providing "counseling." Rivero explained that in lieu of directly filing a formal rules violation, which can result in discipline for the inmate, the officers are encouraged to counsel the inmate about the violation. If an inmate is receptive to the counseling, the incident is documented; however there is no formal violation and no loss of privileges.

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

Rivero requested defendant be brought to the correctional office so he could speak with him about the matter. After learning defendant did not wish to go to the office, Rivero directed other officers to have defendant, whom he had never met, brought to the office. Both defendant and his cellmate were contacted and escorted to the office. Defendant's cellmate was the first to enter the office and Rivero spoke with him about the issue. Due to the cellmate's agitated state, the interview with him was terminated and he was escorted from the office.

Next, defendant entered the office and sat down in a chair by the wall. The small office was occupied by Rivero, who was seated near defendant, and Correctional Sergeants Matthew Bejarano, David Smith, and Correctional Officer Cribbs. Defendant was unrestrained. Rivero began speaking to defendant about the incident; however, defendant appeared uninterested in the conversation. Defendant was not aggressive or angry; rather, he sat, slouched forward, and stated he would not correct the behavior at issue. Rivero decided the counseling was not being effective and instructed defendant to return to his cell. Defendant remained seated so Rivero stood, placed his hand on defendant's shoulder, and again told him to return to his cell. Defendant remained seated for a few more seconds, then suddenly jumped up and struck Rivero in the temple, knocking him backwards. Defendant continued to advance and strike Rivero, causing Rivero to fall against the wall. Rivero grabbed defendant and both men fell to the ground. Rivero began striking defendant while the other officers in the office came to his aid.

Cribbs, Bejarano, and Smith all worked to restrain defendant and were ultimately able to place him in handcuffs. Defendant was transported to the medical facility within the prison by other personnel. Rivero also went to the hospital to evaluate his injuries. As a result of the altercation, Rivero suffered a black eye, cut lip, sore jaw, and a cut on his knee. Cribbs was also injured and suffered a torn shoulder muscle, a bruised knee, and a jammed thumb.

*Defense Case*

Defendant testified he had been having a problem with Cribbs because he failed to provide him with his meal. Because he was upset over this incident, he protested by refusing to stand during the inmate count. Later, 8-10 officers escorted him to the office "to pressure [him] about this situation." Both he and his cellmate were taken to the office and his cellmate was the first to talk to Rivero. Subsequently, defendant entered the office and spoke with Rivero. He told Rivero he had nothing to say, and that Rivero could have talked to him in his cell. Rivero responded that defendant was the inmate, so he should come to Rivero. After defendant told Rivero he had nothing to say, Rivero appeared angry and clenched his fists. He asked defendant if he thought he was tough, and suddenly grabbed defendant by the back of the neck and slammed his head into the wall. Defendant turned and swung at Rivero, and the two fell to the floor. Although Cribbs, Smith, and Bejarano were in the office, they initially did nothing. Rivero hit defendant on his face and upper body and defendant fought back to defend himself. At some point the other officers in the office separated the two, and defendant was restrained. He did not continue to fight once Rivero stopped attacking him. As a result of the altercation, defendant received a bruise on his neck, and a gash and knot to his forehead.

Defendant had not had any prior dealings with Rivero and had no reason to attack him. Defendant admitted he had previously been convicted of murder and robbery and was currently a level 4 inmate at the prison. The parties stipulated that if Rivero grabbed defendant and slammed him into a wall, unprovoked, that would constitute an excessive use of force.

## DISCUSSION

### I.     Review of *Pitchess* Materials

Defendant filed a pretrial discovery motion, pursuant to *Pitchess*, *supra*, 11 Cal.3d 531, seeking confidential personnel information of Rivero, Smith, Cribbs, and Bejarano. The trial court found the question of whether defendant met the threshold showing was an

4.

"extremely close question." This was because the court did not "see any allegations where there was particularized use of excessive force nor any other statements by anyone else that claimed these officers may have used unnecessary force in the past." However the court found there was enough information contained in the motion to conduct an in camera review on that issue. After conducting the in camera review, the court concluded there was no discoverable information contained in the records. Defendant asks this court to conduct an independent review of the in camera proceedings and materials relevant to his *Pitchess* motion.

Pursuant to *Pitchess*, a criminal defendant may "'compel discovery' of certain relevant information in the personnel files of police officers by making 'general allegations which establish some cause for discovery' of that information and by showing how it would support a defense to the charge against him." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1018-1019; see §§ 832.7, 832.8; Evid. Code, §§ 1043-1045.)

> "… To initiate discovery, the defendant must file a motion supported by affidavits showing 'good cause for the discovery,' first by demonstrating the materiality of the information to the pending litigation, and second by 'stating upon reasonable belief' that the police agency has the records or information at issue. [Citation.] This two-part showing of good cause is a 'relatively low threshold for discovery.' [Citation.]" (*Warrick v. Superior Court*, *supra*, 35 Cal.4th at p. 1019.)

If the trial court determines the defendant has established good cause, the court holds an in camera review of the relevant documents, disclosing only "information falling within the statutorily defined standards of relevance." (*Warrick v. Superior Court*, *supra*, 35 Cal.4th at p. 1019.) In conducting an in camera review pursuant to *Pitchess*, the court must make a record that will permit future appellate review. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229-1230; *People v. Guevara* (2007) 148 Cal.App.4th 62, 69.) The court may preserve the record either by copying the documents and placing them in a confidential file, preparing a sealed list of the documents it reviewed, or "simply state for the record what documents it examined" and seal that transcript. (*People v. Mooc*, *supra*, at p. 1229.)

5.

The trial court has broad discretion in ruling on both the good cause and disclosure components of a *Pitchess* motion. Its ruling will not be disturbed absent an abuse of that discretion. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039; *People v. Hughes* (2002) 27 Cal.4th 287, 330; *Haggerty v. Superior Court* (2004) 117 Cal.App.4th 1079, 1086.)

On appeal, we are required to review the record of the documents examined by the trial court and to determine whether the trial court abused its discretion in refusing to disclose the contents of the officer's personnel records pursuant to *Pitchess*. (*People v. Hughes*, *supra*, 27 Cal.4th at p. 330; *People v. Mooc*, *supra*, 26 Cal.4th at p. 1229.) A defendant is entitled to "meaningful appellate review" of the confidential files which were before the superior court when it denied the *Pitchess* motion for disclosure. (*Mooc*, at p. 1228.)

We have examined the sealed transcripts of the in camera hearings, the trial court's settled statement, and all documents provided to this court pursuant to our order to augment the record. Following our review, we conclude the trial court did not abuse its discretion in concluding there was no discoverable material located in the records.

## II. Claimed Evidentiary Error

Defendant contends he was prejudiced by the erroneous admission of testimony on several different topics. Specifically, he claims (1) the prosecutor's questions regarding his prior conviction, (2) a mention during testimony that defendant was on "contraband watch" at some point during his incarceration, (3) testimony establishing he was a level 4 inmate, (4) a question asking defendant why the victim would lie, and (5) a question regarding whether the victim liked being cross-examined all resulted in the admission of prejudicial inadmissible evidence in his trial requiring reversal of his conviction. In the alternative, defendant claims any forfeiture of these claims was the result of ineffective assistance of counsel, and the cumulative nature of the errors resulted in an unfair trial.

### A.  Defendant's prior convictions

During cross-examination, the prosecutor asked defendant a few questions relating to his prior convictions.  Specifically, he asked if defendant had used a gun in the commission of the robbery and homicide, noted defendant was convicted of first degree murder, and asked if he "had to choose and consider killing someone before actually doing it."  Defense counsel objected to some of these questions as being beyond the scope of direct.  The objections were overruled, however.  After asking the last question, an unreported sidebar conference was held, and the prosecution subsequently admitted a copy of defendant's section 969b packet.  No further questions were asked regarding defendant's priors.

Initially, we note that although defendant's counsel objected to some of these questions, he did not object on the specific grounds raised on appeal.  However, defendant raises a claim of ineffective assistance of trial counsel based on the failure to object to the allegedly improper question.  To demonstrate ineffective assistance of counsel, an appellant must show his or her trial counsel's "representation fell below an objective standard of reasonableness" (*Strickland v. Washington* (1984) 466 U.S. 668, 688), and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  (*Id.* at p. 694.)  In light of the claim of ineffective assistance of counsel, we will address defendant's claim of prosecutorial misconduct on its merits.

It is well established that when a prior felony conviction is used to impeach a criminal defendant who chooses to testify at trial, the prosecution is limited to the fact of the conviction, the date, and the nature of the crime committed.  (*People v. Allen* (1986) 42 Cal.3d 1222, 1270.)  Details and circumstances of the prior offense are not admissible.  (*Ibid.*; *People v. Schader* (1969) 71 Cal.2d 761, 773; *People v. Smith* (1966) 63 Cal.2d 779, 790; *People v. David* (1939) 12 Cal.2d 639, 646.)  Our Supreme Court reiterated the rule that eliciting "the exact nature of the convictions, that is, facts that 'would appear on the face of the record of judgment,' [is] proper."  (*People v. Smith* (2003) 30 Cal.4th 581,

634.) Improperly impeaching a witness with the facts of the underlying conviction is error and requires reversal where there is a reasonable probability the defendant would have received a more favorable result absent the error. (*People v. Heckathorne* (1988) 202 Cal.App.3d 458, 463-464.)

The prosecutor's questions in this case went beyond the nature of the offense. Specifically, the prosecutor asked defendant if he had used a gun to rob and kill someone and if he "consider[ed] killing someone before actually doing it." These questions went beyond the facts which appeared on the face of the judgment. Defendant's 2002 abstract of judgment was admitted in the proceedings and established he was convicted of first degree murder with an arming enhancement as well as robbery with an arming enhancement. However, the abstract reflected an arming enhancement under former section 12022, subdivision (a), which may be violated without the defendant being personally armed. (Former § 12022, subd. (a)(1) ["This additional term shall apply to any person who is a principal in the commission or attempted commission of a felony if one or more of the principals is armed with a firearm, whether or not the person is personally armed with a firearm."].) Likewise, although the abstract reflects a first degree murder conviction, the conviction does not necessarily encompass a premeditated murder. One could be found guilty of first degree felony murder that does not require a finding of premeditation and deliberation. (§ 187, subd. (a); *People v. Seaton* (2001) 26 Cal.4th 598, 671.)

Finding the questions at issue were improper does not end the inquiry, we must determine what, if any, prejudice defendant suffered from the questions. In *People v. Heckathorne*, *supra*, 202 Cal.App.3d 458, the court addressed the issue of improper impeachment during cross-examination. There, the prosecutor asked the defendant if he had previously been convicted of felony assault with a deadly weapon, which was entirely proper. After the defendant tried to clarify his conviction by saying the assault was with an automobile, the prosecutor then asked, "'Did you try to assault somebody with this automobile?'" (*Id*. at p. 462.) The court explained this question was

8.

inappropriate, as the defendant's previous answer did not minimize or mislead the jury as to the facts of the prior offense. Thus, the question, which specified the type of assault, was itself "an inappropriate invitation to discuss the facts of the old offense." (*Id*. at p. 463.)

Similarly here, the prosecutor's statements that the defendant "used a gun to kill somebody" and "had to choose and consider killing someone before actually doing it" were improper comments on the facts underlying the offense. The issue then becomes whether the error is prejudicial. In *People v. Heckathorne*, the court found the delving into the facts of the underlying felony conviction was prejudicial. However, in that case, the prosecutor brought out a detailed account of the facts involved in the underlying felony. The court found the error was prejudicial because the "improper questioning elicited inadmissible evidence of a disposition to commit violent crimes without serious provocation or motive and gave him an opportunity to inappropriately describe and characterize the previous incident in the guise of a question." (202 Cal.App.3d at p. 463.) "In short, during the brief colloquy the prosecutor was able to portray [the defendant] as a violent hothead." (*Ibid*.) This error was compounded by the prosecutor's closing argument where he labeled the defendant as, among other things, "violent" during a murder prosecution where the jury had to determine whether the defendant would deliberately fire a gun into a common apartment wall. (*People v. Heckathorne*, *supra*, at p. 463.) In a case which hinged on the defendant's credibility, the admission of "inadmissible evidence of a disposition to commit violent crimes without serious provocation or motive" was prejudicial. (*Ibid*.)

Unlike *Heckathorne*, the error in this case was not prejudicial. While the prosecutor technically elicited facts of the underlying offense, they were in generic terms. The prosecutor never elicited the details of the prior offense, nor were the prior and charged offenses similar, which could support an inference defendant acted similarly in both. Further, defendant's section 969b packet was admitted into evidence. This packet was used to prove defendant had suffered the two prior convictions under the three strikes

9.

law, an issue also tried to the jury. The packet reflects defendant was armed with a firearm for both the robbery and murder convictions and that the murder conviction was in the first degree. Thus, the limited questions by the prosecutor did not produce any evidence which was not present in the documentary evidence received by the jury.

We note this case is also unlike *People v. Ogunmola* (1985) 39 Cal.3d 120, overruled on other grounds in *People v. Ewoldt* (1994) 7 Cal.4th 380, upon which defendant relies. There, the defendant, a doctor, was charged with the rape of two women during their medical exams. The defendant had previously been tried for identical offenses against two different women and acquitted. At trial, the trial court permitted these witnesses to testify as to their encounters with the defendant. The Supreme Court found the prior offenses were improperly admitted. (*Ogunmola*, at pp. 123-124.) In finding the error was prejudicial, the court noted the "fact that the two complaining witnesses were impermissibly corroborated by two others, had to carry much weight with the jury." (*Id.* at p. 124.) In the context of that trial, which "pitted the credibility of the complaining witnesses against that of defendant," the error was prejudicial. (*Ibid.*) This was because when a jury heard of the original two offenses, it acquitted the defendant, however, when a jury heard of all four offenses, it convicted. (*Id.* at pp. 124-125.)

Unlike the situations presented in *People v. Ogunmola* and *People v. Heckathorne*, the error here did not provide substantial corroboration to Rivero's testimony. Nor did the jury hear the details of the prior offenses, rather, the jury simply heard the prior convictions involved the use of a gun and premeditation. Because the documentation regarding defendant's prior offenses was admitted into evidence, which denoted the prior conviction was for first degree murder and a principal was armed with a firearm for both the robbery and murder, the information elicited by the prosecutor was not particularly prejudicial. This, of course, was not a case where defendant was on trial for a similar offense, which would have resulted in significant prejudice. Here defendant was charged

10.

with battering Rivero. As the minimal facts presented to the jury had little bearing on the facts of the case, the error could not be prejudicial.

Defendant additionally argues the "error was compounded when the prosecutor elicited testimony from Rivero, on rebuttal, that [defendant] had been placed on a 'contraband watch.'" First, it does not appear the prosecution "elicited" this information, rather, Rivero volunteered the information when answering a question. During rebuttal, the prosecutor inquired of a conversation between Rivero and defendant that took place sometime after the incident in question. The prosecutor asked:

"Q. Okay, What happened during that conversation?

"A. Well, on first watch, when I come on duty, it's also my job to walk around to inmates that are placed on contraband watch. And, it just so happened to be [defendant] that was on contraband watch for suspected of being—"

At that point defense counsel objected, the prosecutor stated they could "skip over that" and the questioning continued without any further reference to "contraband watch." Without citation to authority, defendant claims this "further bit of 'evidence' exacerbated the danger that the jury would simply consider [defendant] as a bad person, and use this moral indignation to convict on the instant offense." We disagree. At most, the jury heard defendant happened to be on "contraband watch" sometime well after the incident at issue. There was no testimony explaining what "contraband watch" was, nor the reason defendant was on such a watch. No further mention was made of the matter. The evidence did not tend to damage defendant's credibility as to who was the aggressor during the battery at hand. That defendant's counsel never moved to strike the statement, never requested any admonition regarding the statement, and never requested a mistrial indicates this isolated reference was not prejudicial in light of the evidence produced at trial.

### B. Evidence defendant was a level 4 inmate

Defendant claims the trial court erred in failing to exclude evidence that he was a level 4 inmate, claiming such evidence was irrelevant to any issue in the trial. During defendant's cross-examination, the following exchange took place:

"[PROSECUTOR]: Okay. Now you're classified as a level 4 inmate; Is that right?

"[DEFENDANT]: Yes, sir.

"[PROSECUTOR]: And, that's actually the highest level of classification—

"[DEFENSE COUNSEL]: Objection, relevance.

"[PROSECUTOR]: —of inmates in state prison, isn't it?

"THE COURT: You want to approach, please.

"[PROSECUTOR]: [Y]ou're housed in—at the time of this incident you were housed in facility C, right?

"[DEFENDANT]: Yeah.

"[PROSECUTOR]: And, that's a housing unit for or a housing facility for level 4 inmates, correct?

"[DEFENDANT]: Yes.

"[PROSECUTOR]: And, level 4 inmates is the highest classification of inmates; Isn't that right?

"[DEFENDANT]: Yes.

"[PROSECUTOR]: It goes 1, 2, 3, 4 being the highest?

"[DEFENDANT]: Yes.

"[DEFENSE COUNSEL]: Objection, your Honor. Same objection.

"THE COURT: Overruled. [¶] Next question.

"[PROSECUTOR]: And that classification is reserved for inmates who are considered the most serious in state prison, right?

"[DEFENDANT]: Yes, you could say that."

12.

Evidence Code section 351 provides "all relevant evidence is admissible" unless it is otherwise prohibited. Relevant evidence is defined as evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) "Evidence is relevant if it tends "'logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive.'" (*People v. Williams* (2008) 43 Cal.4th 584, 633-634.) A trial court enjoys broad discretion in determining the relevancy of evidence. (*People v. Cash* (2002) 28 Cal.4th 703, 727.) We review a trial court's rulings on relevance and the admissibility of evidence for abuse of discretion. (*People v. Aguilar* (2010) 181 Cal.App.4th 966, 973.)

Arguing there was never an issue as to his classification, defendant claims the above line of questioning was irrelevant. We disagree. While there was no issue directly related to defendant's classification score, the questions were relevant to rebut defendant's assertion, made repeatedly through questioning, that Rivero was acting to intimidate defendant and ultimately assaulted him without provocation. Defendant testified during direct examination that 8 to 10 officers had escorted him from his cell and he was taken to the office to "pressure me about this situation because I was having a problem with the building officer." Throughout the cross-examination of the correctional officers, the defense repeatedly insinuated Rivero was acting improperly by conducting the counseling in the office rather than at defendant's cell in view of the other inmates. Further, the defense made several references to the large size of the officers and the much smaller size of defendant. Defendant's contention that his counsel only referenced the size of the officers within the office to "establish the basic facts of who was there, and the dimensions of the office" is belied by his closing argument where he argued:

> "We know this is a tiny office, okay. But the other officers are there. We have four officers in this tiny office, who just happen to be there for whatever reason.… We know there's a 6'6" guy in there, there's a 6'1" guy in there, Mr. Rivera, [*sic*] and there was another officer. So these are intimidating figures. And, I think that's what Lieutenant Rivera [*sic*] had in mind before [defendant] actually came down."

13.

Defense counsel's questions to the officers as well as defendant's direct testimony placed the issue of how he was transported to the office, as well as the number and size of officers involved in the case, in issue. Evidence defendant was a level 4 inmate, and establishing the classification was reserved for the "most serious" inmates, rebutted the inference that the number of officers present was solely to "intimidate" defendant. Of course, this was the thrust of the defense: that Rivero wanted to establish his authority, treated defendant inappropriately, sought to intimidate him, and when Rivero saw defendant failed to cow to his intimidation, resorted to force to establish his dominance. Thus, we cannot conclude the trial court abused its discretion in finding the evidence was relevant to a disputed fact in issue in the trial.

Besides being irrelevant, defendant argues the evidence was highly prejudicial as it led the jury to speculate as to why he had that classification, and the jury "may have concluded that this was for some heinous act in prison." First, we note no objection was made on that ground in the trial court. Rather, the only objection stated on the record was relevance, which was properly overruled.[2] Defense counsel never articulated on the record why this information should be viewed as inflammatory, nor did he ever suggest a limiting instruction regarding the use of the testimony. As that particular issue was never raised in the trial court, we decline to reach the merits of this contention on appeal. (Evid. Code, § 353; *People v. Partida* (2005) 37 Cal.4th 428, 433-434.)

Furthermore, the line of questioning does not appear to be prejudicial under the facts of this case. The prosecutor asked if the classification was "reserved for inmates who are considered the most serious in state prison." The jury was already apprised of the fact defendant had been committed to prison for first degree murder and robbery. The logical inference would be that an inmate who had committed such offenses certainly would be "considered the most serious in state prison." No testimony was taken

---

[2]It appears some sort of off-the-record discussion was had regarding the objection; however, the contents of that discussion were never placed on the record.

14.

regarding how an inmate received such a classification, nor was there argument or insinuation this classification resulted from any conduct within the prison. Thus, any prejudice from the questions appears to be minimal.

### C. Defendant was not asked to speculate on why a witness would lie

During cross-examination of the defendant the following exchange took place:

"[PROSECUTOR]: Now, you had never seen— And, you testified to this; You never seen Lieutenant Rivero before that day; Isn't that right?

"[DEFENDANT]: Yeah.

"[PROSECUTOR]: And, you actually heard him testify he had only been working at the prison for a couple weeks before that day; Isn't that right?

"[DEFENDANT]: Yes.

"[PROSECUTOR]: But you say he just grabbed you totally unprovoked and threw you against a wall but you can't think of any reason why he wanted to do that?

"[DEFENSE COUNSEL]: Objection, argumentative, compound.

"THE COURT: Overruled.

"[DEFENDANT]: I said I can think of a reason.

"[PROSECUTOR]: And, what reason would that be?

"[DEFENDANT]: I wasn't answering his questions the way he wanted me to and he was backing his officers."

On appeal, defendant contends the objected-to question was improper as it forced him to speculate as to the credibility of the prosecution witnesses. However, defendant failed to object on the basis of prosecutorial misconduct at trial. A defendant "must make a timely objection and request an admonition to cure any harm" in order to preserve a claim of prosecutorial misconduct. (*People v. Frye* (1998) 18 Cal.4th 894, 969, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390.) Thus, defendant's argument has been forfeited. (*People v. Brown* (2003) 31 Cal.4th 518, 553.)

15.

However, in light of defendant's alternative claim of ineffective assistance of counsel, we will address defendant's claim of prosecutorial misconduct on its merits.

Citing *People v. Zambrano* (2004) 124 Cal.App.4th 228 and *People v. Chatman* (2006) 38 Cal.4th 344, defendant argues the prosecutor's question invited speculation and was posed only to allow the prosecutor to argue his case during the testimony. We disagree.

In *People v. Zambrano*, the defendant was charged with drug sales. Undercover police officers testified they approached the defendant's associate and sought to buy drugs. The associate approached the defendant to broker the deal and told the defendant to give her the drugs and the undercover officer to place the money on a truck. After she delivered the drugs to the officer, the defendant picked up the money and was arrested. In contrast, the defendant testified that although he had been in the area, he never had any drugs, did not talk to anyone, and never picked up any money. Rather, one of the undercover officers approached him, said something he did not understand, held a gun to his neck, and handcuffed him. During cross-examination, the prosecutor asked the defendant several times whether the officers who had previously testified were lying. The prosecutor further asked the defendant if the officers would lose their jobs if they lied in court and then subsequently called one of the officers in rebuttal to testify he would be putting his career at risk if he were to lie about the incident at trial. (*People v. Zambrano*, *supra*, 124 Cal.App.4th at pp. 232-235.)

The *Zambrano* court recounted three lines of cases regarding the "were they lying" question, noting one line of cases found those types of questions were always misconduct, another held they were not misconduct, and a third found the questions could be proper under limited circumstances. (*People v. Zambrano*, *supra*, 124 Cal.App.4th at pp. 238-239.) The court then undertook to determine the purpose of the questions asked there, to determine if they were proper. The court determined it was not

> "*always* misconduct for a prosecutor to ask 'were they lying' questions. Although the questions generally elicit inadmissible and irrelevant lay opinion testimony (*People v. Melton* [(1988)] 44 Cal.3d [713,] 744), they

16.

may be allowable in limited circumstances (see [*People v. Foster* (2003)] 111 Cal.App.4th [379,] 385 [discussing 'third line of cases' holding that 'were they lying' questions are not always categorically proper nor categorically improper]). For example, the questions may be appropriate when necessary to clarify a particular line of testimony. (*Ibid*., citing *State v. Pilot* (Minn. 1999) 595 N.W.2d 511, 518 and *State v. Hart* (2000) 303 Mont. 71.) Even if a 'were they lying' question calls for an inadmissible opinion on another person's veracity, asking one or two such questions, if necessary to clarify a witness's testimony, may not be a 'reprehensible method' of persuading the jury. ([*People v. Smithey* (1999)] 20 Cal.4th [936,] 960-961.)" (*People v. Zambrano*, *supra*, 124 Cal.App.4th at p. 242.)

However, the court in that case found the questions asked by the prosecutor served no evidentiary purpose other than to badger the defendant and force him to testify the officers were liars.

Subsequently, in *People v. Chatman*, *supra*, 38 Cal.4th 344, our Supreme Court analyzed the propriety of "were they lying" questions and held the questions were not always categorically improper. Instead, it held "courts should carefully scrutinize 'were they lying' questions in context. They should not be permitted when argumentative, or when designed to elicit testimony that is irrelevant or speculative. However, in its discretion, a court may permit such questions if the witness to whom they are addressed has personal knowledge that allows him to provide competent testimony that may legitimately assist the trier of fact in resolving credibility questions." (*Id.* at p. 384.)

"If a defendant has no relevant personal knowledge of the events, or of a reason that a witness may be lying or mistaken, he might have no relevant testimony to provide. No witness may give testimony based on conjecture or speculation. [Citation.] Such evidence is irrelevant because it has no tendency in reason to resolve questions in dispute. [Citation.]" (*People v. Chatman*, *supra*, 38 Cal.4th at p. 382.) However, "[a] defendant who is a percipient witness to the events at issue has personal knowledge whether other witnesses who describe those events are testifying truthfully and accurately. As a result, he might also be able to provide insight on whether witnesses whose testimony differs from his own are intentionally lying or are merely mistaken." (*Ibid.*) That is particularly

17.

true if a defendant knows these witnesses and knows of reasons why they might lie. (*Ibid.*)

Here, the prosecutor never asked defendant whether Rivero was lying. The question asked was whether defendant could think of a reason Rivero would attack defendant unprovoked. To the extent one could interpret the question in a manner defendant suggests, we find it was similar to the questions found proper in *Chatman*. While defendant did not know Rivero personally, defendant testified as a percipient witness and had personal knowledge of events. (See *People v. Chatman*, *supra*, 38 Cal.4th at p. 382.) The prosecutor was entitled to question defendant about why his perception of the events differed from Rivero's. Defendant claimed it was Rivero who attacked him, unprovoked, while the other officers simply watched. Thus, he claimed the testimony of Rivero, as well as the other officers, could not be believed. The prosecutor sought to clarify whether defendant knew of any reason why Rivero might launch an unprovoked attack. "It was permissible for the prosecutor to clarify defendant's own position in this regard. It was also permissible to ask whether he knew of facts that would show a witness's testimony might be inaccurate or mistaken, or whether he knew of any bias, interest, or motive for a witness to be untruthful. The cross-examination was legitimate inquiry to clarify defendant's position. The questions sought to elicit testimony that would properly assist the trier of fact in ascertaining whom to believe." (*Id.* at p. 383.)

Further, we note the complained-of conduct constituted a single question. Unlike the situation in *Zambrano*, the prosecutor did not ask repeated questions "to berate defendant or force him to call [the witness] a liar in an attempt to inflame the passions of the jury. (Contrast *People v. Zambrano*, *supra*, 124 Cal.App.4th at p. 242.)" (*People v. Hawthorne* (2009) 46 Cal.4th 67, 98, abrogated in part by *People v. McKinnon* (2011) 52 Cal.4th 610.) Indeed, defendant never called Rivero a liar; rather, he simply provided a reason as to why Rivero might have attacked him. As such, we find the "prosecutor's

18.

sole question was neither deceptive nor reprehensible, and did not constitute misconduct." (*People v. Hawthorne*, *supra*, at p. 98.)

### D. The prosecutor did not engage in misconduct by asking Rivero if he liked being criticized

During the rebuttal case, the prosecutor asked Rivero, "Do you like being questioned about every—all the detail of your job and criticized and second guessing everything that you've done?" Defense counsel objected to the question, and the trial court sustained the objection. Rivero never answered the question and no further statement was made on the subject.

To successfully raise a claim of prosecutorial misconduct, a defendant must show either a pattern of egregious conduct or the use of deceptive or reprehensible methods to attempt to persuade a jury as to create a reasonable likelihood such behavior prejudicially affected the jury. (*People v. Ochoa* (1998) 19 Cal.4th 353, 427.) This means the prosecutor must engage in an egregious pattern of conduct infecting the trial with unfairness so as to render it fundamentally unfair, or engage in reprehensible, deceptive conduct. (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.)

> "As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.] Additionally, when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*Ibid.*)

Initially, although defense counsel objected to the question, we note his objection was the question was irrelevant and argumentative. As he failed to object on prosecutorial misconduct grounds, and likewise failed to request any sort of admonition, the issue is not reviewable on appeal. (*People v. Samayoa*, *supra*, 15 Cal.4th at p. 841.) Because defendant makes alternative ineffective assistance of counsel arguments, although, curiously, none specifically relating to this argument, we will nevertheless address the merits.

19.

Relying on this court's prior opinion in *People v. Pitts* (1990) 223 Cal.App.3d 606, defendant argues the prosecutor's question vilified defense counsel by pointing out the discomfort a witness felt under cross-examination. We disagree. *Pitts* involved a child molestation case where the defense called a child witness to testify she had not been molested by her father. The prosecutor there attacked defense counsel for doing so, and "in essence accused defense counsel of contributing to the ruination of" the child's life. The statements by the prosecutor could "reasonably be interpreted as a subtle accusation that defense counsel knowingly presented perjured testimony." (*Id.* at p. 705.) The pervasive misconduct we found in *Pitts* is a far cry from the single question posed in this case. Here, at most, the question implied the witness did not like having his decisions criticized or second-guessed. It is not reasonably probable the jury interpreted this question as inviting sympathy for the witness or in any way vilifying the defense.

Likewise, defendant's reliance on *People v. Turner* (1983) 145 Cal.App.3d 658, disapproved on other grounds in *People v. Newman* (1999) 21 Cal.4th 413, is equally unavailing. There, the prosecutor characterized the rape victim as "'doubly the victim'" because she had to recount the crime several times: to the police, to the district attorney, during the preliminary hearing, and again at trial. In addition, the prosecutor pointed out the jury could see "what that's like being questioned by the attorney for your attacker. You've seen what that's like." In addition, the prosecutor argued the victim was "attacked by a trained lawyer who's hired by the defendant." (*Turner*, at p. 672, italics omitted.) The court found referring to the defendant's attorney as an attacker "obviously was casting aspersions on both [the defendant's] constitutional right to defend himself and his right to be represented by counsel." (*Id*. at p. 674.) By labeling the defense attorney as "an additional attacker in a prosecution of a violent offense" the prosecutor committed misconduct. (*Ibid*.) The single question posed in this case, however, did not label the defense attorney as an attacker. It only implied the witness did not enjoy being second-guessed in his decisions.

20.

Even were we to assume the question constituted misconduct, it is clear, under any standard of prejudice, the question did not affect the outcome of the trial. The trial court sustained the defense objection to the question and the witness did not answer. A party generally is not prejudiced by a question to which an objection has been sustained. (*People v. Mayfield* (1997) 14 Cal.4th 668, 755; *People v. Johnson* (2003) 109 Cal.App.4th 1230, 1236; see *People v. Pinholster* (1992) 1 Cal.4th 865, 943, disapproved on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 459.) Further, the court instructed the jury, "Do not let bias, sympathy, prejudice … influence your decision. Bias includes, but is not limited to, bias for or against the witnesses, attorneys, defendant or alleged victim." The court also instructed, "You must decide what the facts are in this case. You must use only the evidence that was presented in this courtroom. Evidence is the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence. [¶] Nothing that the attorneys say is evidence.… Their questions are not evidence. Only the witnesses' answers are evidence.… Do not assume that something is true just because one of the attorneys asked a question that suggested it was true." These instructions focused the jury on its task of impartially evaluating the evidence and thereby further served to lessen any potential prejudice stemming from the prosecutor's question.

### E.     There was no cumulative prejudice

Defendant finally argues that even if the above mentioned errors were harmless on their own, in combination they were prejudicial. We disagree. As we have already explained, only the questions relating to defendant's prior convictions constituted error, and the error was harmless as almost identical information was presented to the jury in the documents demonstrating his prior convictions. As such, there is no cumulative prejudice to consider.

## III.     The Trial Court Did Not Err in Declining to Strike a Prior Conviction

Defendant makes two related arguments regarding the use of his prior convictions for sentencing. He argues the trial court's failure to strike one of his prior strikes

constituted an abuse of discretion and, further, the trial court was required to strike one of his prior strike convictions as they both arose from the same act. Neither claim has merit.

A trial court may exercise its discretion to strike a prior strike "in furtherance of justice." (§ 1385, subd. (a); see *Romero*, *supra*, 13 Cal.4th at p. 530.) We review a ruling on a motion to strike a prior felony conviction under a deferential abuse of discretion standard. (*People v. Williams* (1998) 17 Cal.4th 148, 162.) The defendant bears the burden of establishing the trial court's decision was unreasonable or arbitrary. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977–978 [presumption that trial court acts to achieve lawful sentencing objectives].) We do not substitute our judgment for that of the trial court. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) "It is not enough to show that reasonable people might disagree about whether to strike one or more of [the defendant's] prior convictions." (*Ibid.*) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

The three strikes law "creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378.) Thus, a court abuses its discretion in failing to strike a prior felony conviction allegation in only limited circumstances, such as when it was not aware of its discretion to dismiss, it considered impermissible factors in declining to dismiss, or it failed to correct an arbitrary, capricious or patently absurd result of application of the three strikes law under the specific facts of a particular case. (*Ibid.*)

In considering a defendant's invitation to strike a prior felony conviction allegation, both the trial court and the reviewing court, "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part …." (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.)

Defendant contends the trial court erred by failing to strike one of his prior strikes pursuant to the holdings in *People v. Benson* (1988) 18 Cal.4th 24 and *People v. Burgos* (2004) 117 Cal.App.4th 1209 because both of his prior strikes were based upon the same criminal act. Defendant raised the issue at sentencing when he requested the trial court to exercise its discretion to strike one of the prior strikes under section 1385, however, he conceded the determination of whether to strike a prior strike was discretionary, not mandatory. Notwithstanding his argument in the trial court, defendant now contends the court was required to strike the prior strike. We disagree.

In *Benson*, the defendant suffered two prior strikes—residential burglary and assault with intent to commit murder—based upon a single incident where he entered the victim's residence and stabbed her multiple times. (*People v. Benson*, *supra*, 18 Cal.4th at p. 27.) He argued that multiple convictions stemming from an indivisible course of conduct that prohibited separate punishment pursuant to section 654 could only result in one strike under the three strikes law. The California Supreme Court, relying on the plain language of the statute, found each prior serious or violent felony conviction qualified as a strike, regardless of whether the punishment for that conviction was mandatorily stayed pursuant to section 654. (*Benson*, at pp. 30-32.) In a footnote, the court stated it was not called upon to decide "whether there are some circumstances in which two prior felony convictions are so closely connected—for example, when multiple convictions arise out of a single act by the defendant as distinguished from multiple acts committed in an indivisible course of conduct—that a trial court would abuse its discretion under section 1385 if it failed to strike one of the priors." (*Benson*, at p. 36, fn. 8.) The court rejected an inflexible rule that would "preclud[e] a conviction on which sentence was stayed under section 654 from *ever* being treated as a separate strike." Instead, the court found the three strikes law "must be interpreted to permit—but not necessarily require—a qualifying prior conviction to be treated as a strike even if the sentence on the conviction has been stayed pursuant to the provisions of section 654." (*Benson*, at p. 36.)

Subsequently, in *People v. Burgos*, the Second Appellate District, Division Two, found failure to strike a prior conviction was an abuse of discretion where two prior strike convictions arose from a single act. (*People v. Burgos*, *supra*, 117 Cal.App.4th at p. 1214.) There, the defendant had two prior strike convictions for attempted robbery and attempted carjacking, which arose from the same act. The trial court declined to strike one of the prior strikes, noting that under *People v. Benson* it had discretion in the matter, and it declined to exercise that discretion. On appeal, the court read the *Benson* footnote to "strongly indicate[] that where the two priors were so closely connected as to have arisen from a single act, it would necessarily constitute an abuse of discretion to refuse to strike one of the priors." (*People v. Burgos*, *supra*, at p. 1215.) The two priors not only arose from the same act, but sentence on both crimes was expressly prohibited by subdivision (c) of section 215. In finding an abuse of discretion, the court also considered the defendant's criminal history and that the defendant could serve a term as long as 20 years even if one prior were stricken. (*Burgos*, at p. 1216.)

Recently, the Third Appellate District addressed the same issue, namely, whether it was an abuse of discretion to fail to strike one of two strike priors for robbery and carjacking in *People v. Scott* (2009) 179 Cal.App.4th 920. That court expressed doubt as to the actual holding of *People v. Burgos*, explaining that case

> "seems to hold that the 'same act' circumstance is dispositive, then seems to treat it as one factor in a *Romero* analysis, and then says the nature of 'the particular offenses that constituted the two prior strike convictions in this case' is what *compels* striking one strike, again strongly indicating a rule that the 'same act' circumstances *mandate* striking a strike in such cases." (*People v. Scott*, *supra*, at p. 930.)

*Scott* rejected the holding in *People v. Burgos* and concluded "the 'same act' circumstances posed by robbery and carjacking cases provide a factor for a trial court to consider, but do not *mandate* striking a strike." (*People v. Scott*, *supra*, 179 Cal.App.4th at p. 931.) Defendant urges this court to follow *Burgos* and reject *Scott*, arguing *Scott* was wrongly decided.

24.

We decline defendant's invitation, but note the issue is currently pending before the California Supreme Court in *People v. Vargas*, review granted September 12, 2012, S203744. As the *Burgos* case is distinguishable, its holding does not apply to this case.

The trial court first found defendant's prior offenses did not constitute a single act, "but rather a part of a transaction which included not only the murder of the victim, there was also a separate robbery." We agree. The trial court was aware the prior offense occurred in a single transaction, although it disagreed the prior offenses consisted of a single act. Defendant provided only minimal information regarding the prior offenses, consisting only of the transcript from the sentencing proceeding. We note defendant was convicted of murder and robbery, two very distinct crimes. Defendant argues his convictions rested upon a single act; however, the record sheds little light upon the underlying acts that formed the basis of his prior conviction. Indeed, the only reference to the prior crimes is found in the sentencing transcript regarding the prior offenses where the trial court noted the codefendants' cases remained unresolved as one jury failed to reach a unanimous decision as to guilt and one failed to reach a unanimous decision as to penalty. As such, in sentencing defendant for the prior crimes, the court explained, "it would be unfair to the People and to the [co]defendants … and their attorneys, for this court to say too much in sentencing [defendant.]" (Some capitalization omitted.) The only recitation of the facts provided by the court was as follows:

> "This case resulted in the tragic death of a man who was a loving father and husband, who provided for his family; worked six days a week, two jobs; and was simply just doing his job cleaning up a restaurant, when he was put upon by two people, one of whom was armed, and who ruthlessly took his life.

> "[Defendant] participated in that crime by assisting the other party by taking the money, carrying it away." (Some capitalization omitted.)

This limited recitation of facts supports the trial court's conclusion that defendant's conviction rested upon more than a single act, rather it included both a homicide and the taking of property. At the very least, it indicates defendant both took the property during the robbery and carried it away. The record can also be read to

25.

support the inference that defendant assisted in the murder. In any event, it is clear the trial court considered the limited circumstances it was provided with in determining whether to exercise its discretion to strike a prior strike.

Turning to the remaining factors, it is clear the trial court did not abuse its discretion in declining to strike one of defendant's prior convictions. Both the prior offense as well as the current offense involved violence. The court indicated it had considered defendant's young age at the time of the prior offense but, in its discretion, declined to strike a prior strike.

We cannot find the trial court's ruling to constitute an abuse of discretion. The record reveals at age 14 defendant participated in a robbery and homicide and received a sentence of 26 years to life.[3] In the 12 years since he was sentenced, defendant has been continuously incarcerated. Although he did not commit another felony during that time, the record reveals he has suffered 11 separate disciplinary actions within the prison system since 2003. This indicates defendant's lack of ability to comply with the prison rules. Further, the current offense consisted of actual violence. Defendant attempts to downplay the current conviction, stating it is "at the lower end of the scale of felonies." Defendant ignores the fact that in the current offense he launched a surprise attack on a correctional officer while he was being counseled for yet another rule infraction. Defendant, knowing of his own criminal history and while still serving that sentence, decided to commit yet another act of violence. Such a person can hardly be considered outside the spirit of the three strikes law.

---

[3]The record reveals defendant was convicted of the special circumstance of committing the murder during the course of a robbery pursuant to section 190.2, subdivision (a)(17)(A). Ordinarily, such a finding requires a sentence to life without the possibility of parole (§ 190.2, subd. (a)), however, due to defendant's young age, defendant was sentenced to 25 years to life on the murder charge. (§ 190.5, subd. (b); *People v. Demirdjian* (2006) 144 Cal.App.4th 10, 17.)

26.

Considering all of the circumstances here, we conclude the trial court's decision to impose a three strikes sentence was not an abuse of discretion.  Therefore, we find no error.

**DISPOSITION**

The judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
GOMES, Acting P.J.


_____
OAKLEY, J.*

---

*Judge of the Madera Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.