Filed 8/2/16  P. v. Miranda CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E063695 |
| v. | (Super.Ct.No. SWF1302407) |
| STEVEN JOE MIRANDA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Timothy F. Freer and Judith C. Clark, Judges.  Affirmed with directions.

Frank J. Torrano, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Scott C. Taylor and Daniel Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

1

On September 30, 2014, a jury convicted defendant and appellant Steven Joe Miranda of unlawfully possessing ammunition as a felon (Pen. Code,[1] § 30305, subd. (a)). On April 3, 2015, defendant was sentenced to probation; however, 14 days later, after violating the terms of his probation, he was sentenced to three years in state prison.[2] On appeal, defendant contends the prosecutor committed misconduct, the trial court erred in excluding evidence and instructing the jury, the cumulative error doctrine requires reversal, and the amended abstract of judgment needs correction. With the exception of defendant's challenge to the abstract of judgment, we reject his claims.

## I. PROCEDURAL BACKGROUND AND FACTS

At approximately 11:20 p.m. on July 31, 2013, Riverside County Sheriff's Deputy James King stopped a white four-door sedan. When Deputy King approached the vehicle, defendant was sitting in the driver's seat and an unidentified female was in the passenger's seat. After defendant admitted that he was on probation, Deputy King radioed for backup.

Deputy Stephen Enochs responded to the scene and stood with defendant and his passenger while Deputy King searched the vehicle. Upon Deputy King finding a backpack directly behind the driver's seat, defendant claimed that it belonged to his cousin, but then dropped his head and said in a sad voice, "'Man, I forgot that was in

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Judge Freer presided over defendant's trial and sentencing. Judge Clark presided over the violation of probation hearing, imposition of suspended sentence, and preparation of the abstract of judgment and the amended abstract of judgment.

2

there.'" When asked what was inside the backpack, defendant replied "'probably a magazine and ammunition. We just went shooting earlier.'" Inside the backpack were 14 rounds of ammunition loaded into a .40-caliber magazine. Defendant seemed disappointed that the deputies had found it.

Defendant testified that on the evening of July 31, 2013, he was driving his wife's car with his uncle's stepdaughter when he was contacted by police. He claimed the backpack was in his trunk ("by the back of the speaker box" that was sitting on the folded down rear back seat), not behind the driver's seat, and that it belonged to his cousin Bobby, who had gone shooting earlier that day with his uncle. Defendant claimed that he knew he would be stopped by the deputies because law enforcement "always harass[es] him."

Defendant's wife testified that after defendant was arrested, she retrieved the white sedan.

## II. DISCUSSION

### A. Prosecutorial Misconduct.

According to defendant, reversal is required because "[n]umerous instances of prosecutorial misconduct . . . infected nearly every aspect of the trial." Specifically, defendant contends the prosecutor (1) improperly elicited testimony that he committed an uncharged crime regarding high-capacity magazine; (2) baited him into accusing the deputies of perjury; (3) vouched for the credibility of the deputies and expressed her personal opinion that defendant was a "[g]uilty [l]iar"; (4) used unfair tactics to make it

3

seem that defendant went to Massacre Canyon multiple times to shoot guns; and (5) lessened the burden of proof by misstating it during closing argument.

1. *Forfeiture.*

The People contend that defendant has forfeited any claim of prosecutorial error by failing to object at trial. A claim of prosecutorial misconduct must be raised in the trial court or it is forfeited on appeal. (*People v. Bolden* (2002) 29 Cal.4th 515, 562; *People v. Hill* (1998) 17 Cal.4th 800, 820.) However, if the character and frequency of the misconduct were such that objecting and asking for the admonitions would not have obviated the harm, then an appellant court may find no forfeiture of the issue. (*People v. Hill*, *supra*, at pp. 820-821.) "Although the record does not reflect that defense counsel objected at trial to every instance about which defendant now complains, we will nonetheless exercise our discretion to address the issue on the merits. [Citation.]" (*People v. Williams* (2009) 170 Cal.App.4th 587, 628.)

2. *General Principles Regarding Prosecutorial Misconduct.*

"Prosecutors play a dual role in the criminal justice system; they are advocates, but they are also administrators of justice. [Citation.] "'"[I]t is their sworn duty to see that the defendant has a fair and impartial trial, and that he be not convicted except by competent and legitimate evidence. . . ."'" [Citation.]" (*People v. Bryden* (1998) 63 Cal.App.4th 159, 182.) A prosecutor's intemperate behavior violates the federal Constitution when that behavior comprises a pattern of conduct so egregious that it infects the trial with such unfairness as to deny the defendant due process. (*People v.*

4

*Stanley* (2006) 39 Cal.4th 913, 951.) Under the state standard, conduct that does not render the trial fundamentally unfair is misconduct only if it involves the use of deceptive or reprehensible methods to attempt to persuade the trier of fact. (*Ibid*.) "A defendant's conviction will not be reversed for prosecutorial misconduct, however, unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct. [Citation.]" (*People v. Crew* (2003) 31 Cal.4th 822, 839.)

3. *There Was No Misconduct in Soliciting Testimony That Defendant Possessed a High-capacity Magazine.*

Defendant asserts the prosecutor committed misconduct by eliciting evidence that he had committed the uncharged crime of buying or receiving an illegal high-capacity magazine, and then emphasized the uncharged crime in her closing argument. We find no misconduct.

In response to the prosecutor's request to describe the magazine found in defendant's vehicle, Deputy King testified: "It's a high capacity magazine. Basically, civilians . . . in California aren't allowed to purchase magazines over ten rounds. This one contained 14, I believe." On cross-examination, defense counsel asked Deputy King about the number of bullets in the magazine, and the deputy replied that he had removed 14 but did not know if it held more. Defense counsel further confirmed that only "law enforcement" can purchase this type of magazine in California. The trial court had Deputy King clarify that this type of magazine is "high capacity" because it holds more

5

than 10 rounds, and that it is illegal to purchase in California. When Deputy Enochs took the stand, the prosecutor confirmed that peace officers have access to buy items, such as high capacity magazines, that civilians may not buy.

In closing, the prosecutor reminded the jury that the backpack contained "a loaded magazine with 14, .40[-]caliber bullets," and argued, "And we heard from the deputy, in fact, this—this particular magazine that was located was a high-capacity magazine. And that's important because that's—the magazine itself is illegal and civilians can't actually buy them in the state of California. [¶] So the defendant was in possession of a high-capacity magazine that civilians can't buy. Deputy King told us that law enforcement are the only people that can actually go and buy a—a magazine that holds more than ten bullets. But the defendant, on July 31st, 2013, had that high-capacity magazine fully loaded in his car."

Defendant was charged with unlawfully possessing ammunition as a felon. (§ 30305, subd. (a)(1) ["No person prohibited from owning or possessing a firearm . . . shall own, possess, or have under custody or control, any ammunition or reloaded ammunition."].) Evidence of the magazine was admissible because it formed the basis for the charged offense. The fact that the magazine held over 10 rounds arguably was irrelevant, because the People did not charge defendant with buying, receiving, manufacturing, importing, selling, or loaning a high capacity magazine. (§ 32310 ["[A]ny person in this state who manufactures or causes to be manufactured, imports . . . keeps for sale, or offers or exposes for sale, or who give, lends, buys, or receives any

6

large-capacity magazine is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170."]; § 16740 [defining high capacity magazine as having the capacity to accept more than 10 rounds]; Evid. Code, §§ 350 [only relevant evidence is admissible], 210 [defining relevant evidence].) However, the People assert that such evidence was relevant to the issue of possession because it "directly contradicted [defendant's] defense that the magazine, and the ammunition inside it, belonged to his cousin who worked in the military and was stationed in San Diego." We agree. According to defendant, the ammunition belonged to his cousin, who was in the military. Officer Enochs's testimony established that the magazine could not be purchased by the general public or military personal. Thus, evidence of the magazine's size refuted any suggestion that it was more likely owned by the cousin because he was in the military.

Contrary to defendant's assertion, the prosecutor's behavior was not designed to prejudice the jury against defendant. The initial reference to the illegality of the magazine was volunteered by the witness in response to the prosecutor's open-ended question. She did not specifically solicit the evidence, nor could she have anticipated that the deputy would volunteer it. Moreover, we reject defendant's claim that the evidence related to the magazine "was not admitted to prove any fact other than [defendant's] disposition to commit crimes." The prosecutor never argued that defendant had a propensity for criminal behavior, nor did she suggest that the jury convict him of illegally possessing ammunition because the magazine was illegal. Possession was the only

7

contested issue.  Regardless of the illegality of the magazine, if the jury believed that it belonged to defendant, then it would find him guilty of the charged offense.  The prosecutor did not commit misconduct.

Moreover, even if the prosecutor had committed misconduct, it was harmless. Defendant admitted to the deputies that the backpack in his car contained ammunition and the magazine, and he admitted that he had just gone shooting.  That defendant denied making such statements at trial made the issue a credibility contest between defendant and the deputies.  (See discussion below.)  Because the jury believed the deputies, any error in the prosecutor's elicitation of evidence that the magazine was high capacity was harmless.

4.  *"Were They Lying" Questions Constituted Prosecutorial Misconduct.*

Defendant contends the prosecutor committed misconduct by baiting him into accusing the deputies of perjury.  We agree, but find the misconduct harmless.

Defendant's version of events was markedly different from that of the deputies. Defendant testified that law enforcement officials frequently harassed him.  He disagreed with a lot of the deputies' testimonies, claiming [t]here was lots that [Deputy Enoch] made up."  After defendant testified in direct conflict to much of the testimony of the deputies, the prosecutor inquired *several* times whether defendant thought the deputies were "lying" about certain facts.[3]  As this court recognized in *People v. Zambrano* (2004)

_____

**3** Further, in closing, the prosecutor told jurors to weigh defendant's testimony against that of the deputies by considering bias, interest, and personal interest in the case.

*[footnote continued on next page]*

8

124 Cal.App.4th 228, 241-243, when a prosecutor uses "questions to berate [a] defendant before the jury and to force him to call the officers liars in an attempt to inflame the passions of the jury," her actions constitute misconduct. (*Id*. at p. 242.) Nonetheless, in this case, we conclude that the misconduct was harmless because it is not reasonably probable that the jury would have reached a result more favorable to defendant had the misconduct not occurred.

The evidence against defendant consisted solely of the testimony of the deputies about the events of the incident, and defendant's categorical denial of each material aspect of such testimony. However, defendant's explanation of what occurred was unreasonable. He testified that the magazine and the backpack belonged to his cousin, who had driven up in his truck from San Diego to defendant's house for a family get-together. Defendant testified that his cousin and uncle went shooting while he (defendant) stayed at home to get everything ready for the barbecue; the cousin drove his truck and the uncle drove defendant's car. Defendant claimed that his cousin's backpack was left in his (defendant's) car by mistake; however, he was unable to explain how this

*[footnote continued from previous page]*
*[footnote continued from previous page]*
The prosecutor referenced both deputies and asked the jury (1) whether they have a bias in the case, (2) whether they have an interest in the case, (3) whether they were doing their job, or (4) whether anything was presented to make the jurors question the truthfulness of the deputies. The prosecutor then referenced defendant and said, "When the defendant was up there testifying, does he have a personal interest in how this case is decided? Yes. He does. [¶] Does he have bias? Yeah. [¶] He's been convicted of a felony, and what does that mean that means you to get to use that to look at whether he is truthful, whether or not he is honest, whether or not he's credible when he comes in."

9

could have happened when his cousin drove separately. When questioned, defendant was very familiar with the contents of the backpack.

The jury had the choice of what testimony to believe and chose to believe that of the deputies. Even if the prosecutor had not committed misconduct, it is not reasonably probable that the jury would have believed defendant's version of events.

5. *Vouching for the Credibility of Witnesses and Opining That Defendant Is a Liar.*

Defendant argues that the prosecutor committed misconduct by vouching for the credibility of the deputies and expressing her personal opinion that defendant was a guilty liar. We disagree.

During closing argument, the prosecutor discussed the issue of witness credibility: "We heard from Deputy King, who is an officer, who conducted the stop and did the search. . . . [D]oes he have a bias in this case? . . . [¶] Then, you look at the next witness. That's Deputy Enochs. . . . [¶] . . . [D]oes he have an interest in this case? No. [¶] Does he have a bias or personal motive? [¶] Was anything presented to you to make you think—or question his truthfulness? And I submit to you, no." The prosecutor later argued that defendant had a personal interest in the case and that he was a convicted felon.

Defense counsel responded as follows: "What the officer says must be true? [¶] You guys are all adults. You all have your life experiences. You all promised to bring your common sense in here. Officers can . . . be mistaken. They could outright lie. They

10

can exaggerate, and [don't] be offended by that . . . comment because it's true. [¶] . . . I'm not saying that the officers, Officer King or Officer Enochs, outright lied. . . . [¶] In this case, I don't think that these officers ever thought [defendant] would . . . go to trial. They thought, okay—because he's a convicted felon allegedly in possession [of] ammo in the bag disclosed—where did they go wrong?"

In rebuttal, the prosecutor argued that everyone, including the deputies and herself, makes mistakes; however, the fact that the deputies incorrectly identified the type of car defendant was driving does not mean that defendant did not commit the crime he was being charged with.[4] She added, "Does that mean that the rest of the information that Deputy King provided to you was a lie? [¶] That's . . . just not reasonable. And to state that Deputy King would get up before you and lie to you. For what? . . . [T]o lose his job, to be brought up on perjury charges?" Reiterating Deputy Enochs's lack of interest in the case, the prosecutor pointed out that he was there doing his job of assisting Deputy King, "[a]nd so when he writes that report and he says those statements were made, they were made."

Prosecutors may comment on the credibility of witnesses based on facts contained in the record and any reasonable inferences therefrom; however, they may not vouch for the credibility of witnesses based upon personal belief or by referring to evidence outside

---

**4** In his report, Deputy King identified defendant's car as a Chrysler, when it was a Chevrolet. Also, the deputies testified that defendant and his passenger were sitting on the curb during the search, while defendant testified that the deputies had excused the passenger, telling her she could start walking.

11

the record.  (*People v. Redd* (2010) 48 Cal.4th 691, 740 (*Redd*).)  "Prosecutorial assurances, *based on the record*, regarding the apparent honesty or reliability of prosecution witnesses, cannot be characterized as improper 'vouching,' which usually involves an  attempt to bolster a witness by reference to facts *outside* the record. [Citation.]"  (*People v. Medina* (1995) 11 Cal.4th 694, 757.)

Defendant's claim fails on the merits because the prosecutor's comments regarding the deputy witnesses were based upon facts established by their testimonies and did not refer to evidence outside the record.  (*Redd*, *supra*, 48 Cal.4th at p. 740; cf. *People v. Turner* (2004) 34 Cal.4th 406, 433 [prosecutor improperly referred to his prior experience with the witnesses].)  Here the comment regarding the deputies writing down information in their reports did not refer to evidence outside the record.  (*Redd*, *supra*, at p. 741 [prosecutor's comments that police officer "'doing her job,'" and another officer "'do[ing] [his] job[] properly,'" not improper vouching].)  Indeed, all of the prosecutor's comments on the deputies' credibility were based upon evidence at trial and reasonable inferences therefrom, rather than personal knowledge or belief.

6. *The Prosecutor Did Not Use Unfair Tactics.*

Defendant claims that the prosecutor committed misconduct by using unfair tactics to make it seem that defendant went to Massacre Canyon multiple times to shoot guns. We find no misconduct.

On cross-examination, defendant testified that he frequented Massacre Canyon; however, he denied going there to shoot.  On redirect, defense counsel asked what

12

activities, if not shooting, defendant had done in the canyon. The prosecutor's relevancy objection was sustained.

Defendant's challenge to the prosecutor's objection fails because "[o]bjections constitute misconduct only if they go beyond the charge of legal or procedural violation and directly or by clear inference question the motives or integrity of opposing counsel." (*People v. Price* (1991) 1 Cal.4th 324, 448.) "Of course, it is not misconduct to challenge the propriety of opposing counsel's question to a witness or prospective juror, for this is the purpose of virtually all trial objections." (*Ibid.*) Here, the prosecutor's objection was well grounded. The activities that defendant engaged in on his previous trips to the canyon were wholly irrelevant to the issue of whether he knowingly possessed ammunition in his vehicle on July 31, 2013. Moreover, there was no evidence in the record to suggest that defendant frequently went shooting in the canyon, and defendant himself denied it. Thus, we reject the assertion that the prosecutor engaged in a deceptive or reprehensible method of persuading the jury into thinking that defendant frequently went shooting in the canyon by objecting to defense counsel's question.

7. *The Prosecutor Did Not Misstate the Burden of Proof.*

Defendant argues that the prosecutor committed misconduct when she lessened the burden of proof by misstating the reasonable doubt standard in argument to the jury. We disagree.

Prior to opening statements and closing arguments, the trial court instructed the jury that the prosecution bore the burden of proving defendant's guilt beyond a

13

reasonable doubt. The jury was also instructed to follow the law as explained by the court, even if it conflicted with the attorneys' comments. In evaluating witnesses' testimony and credibility, the jury was told that it "may consider anything that *reasonably* tends to prove or disprove the truth or accuracy of that testimony. . . . [¶] . . . [¶] How *reasonable* was the testimony when you consider all of the other evidence in the case?" (Italics added.) Regarding circumstantial evidence, the jury was told, "before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only *reasonable* conclusion supported by the circumstantial evidence is that the defendant is guilty." (Italics added.)

As part of closing argument, the prosecutor discussed the biases of the witnesses and reminded the jury to ask themselves "how reasonable is the person's testimony in light of all of the other evidence." The prosecutor described Deputy King's testimony as "reasonable . . . and truthful" and defendant's testimony as "simply unreasonable, in light of all the testimony that you heard." She further claimed that it was not reasonable to believe that the deputies were lying and defendant was telling the truth. In response, defense counsel attacked the credibility of the deputies, contending that their testimony was contradictory or inconsistent with the facts. Regarding circumstantial evidence, defense counsel argued that it could only be used to convict defendant if the jury was "convinced that the reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty." In rebuttal, the prosecutor reiterated that "defendant's statement and testimony is not reasonable and it's not truthful . . . ." She explained that

14

just because one of the deputies made a mistake in identifying the make of defendant's vehicle did not make it "reasonable" to conclude that the rest of the information the deputy provided was a lie. Finally, the prosecutor repeatedly questioned whether it was "reasonable" to believe defendant and disbelieve the deputies in light of the totality of the evidence presented at trial.

In support of his claim, defendant references several statements made by the prosecutor in closing argument. However, contrary to defendant's assertion, the prosecutor never used the term "reasonable" when describing the burden of proof. Rather, each of defendant's references to the record demonstrates that the prosecutor consistently used the word when addressing witness credibility and circumstantial evidence. Such use is proper. (*People v. Romero* (2008) 44 Cal.4th 386 [approving the prosecutor's argument that the jury must "'decide what is reasonable to believe versus unreasonable'" and "'accept the reasonable and reject the unreasonable'"].) Thus, defendant's claim fails.

## B. Exclusion of Evidence.

Defendant faults the court for excluding his daughter's "exculpatory testimony with *no justification*." (Original italics.) We find no error.

Prior to trial, defense counsel made an offer of proof that defendant's daughter (Ms. Ayala) was prepared to testify that (1) she was one of the children who went shooting with defendant's cousin and uncle earlier in the day, and (2) defendant did not go shooting. Upon the court's inquiry, defense counsel acknowledged that defendant had

told the deputies that he had been out shooting with his cousin earlier that day. The prosecution objected and the court reserved its ruling until after it had a chance to hear defendant's testimony.

Following defendant's testimony, defense counsel sought to introduce the testimony of another one of defendant's daughters (Ms. Altimarano), who would state that only defendant's cousin and uncle took her shooting and that she could explain how the backpack ended up in defendant's vehicle. The prosecutor objected on the grounds the evidence was irrelevant and could confuse the jury as to the real issue in the case. In deciding to exclude the testimony, the trial court found the testimony to be "marginally relevant and could undermine [defendant's] own case." The court opined that testimony from a family member who knew the backpack was in defendant's vehicle would undermine defendant's claim of lack of knowledge. The court further found that the testimony did not go with any defense in the case as to whether or not defendant was or was not in possession.[5] The court also added that it could exclude the testimony on the independent basis that the witness was not timely disclosed to the prosecution.

---

[5] "Under a 352 analysis and before the Court excludes any type of witness testimony, the Court has to be very diligent and careful. But it seems to the Court that the offer of proof is tenuous under this whole—there might be some logical relevance, legal relevance, in a 352 analysis, with any common sense in applying it here, it just—it just doesn't make any sense . . . and I think to some extent it also undermines the defense case. [¶] The defense case is that [defendant] doesn't have any knowledge there is a magazine in his backpack. And if I understood his testimony correctly . . . he didn't know the backpack was there. He didn't inspect the car. He didn't look around the car. He got in the car, drove it, apparently, without his license or wallet or anything, just dropping off individuals. [¶] But . . . now, you're going to offer proof that his own

*[footnote continued on next page]*

16

The trial court did not abuse its discretion in excluding defendant's daughter's testimony. Defendant argues that the testimony was relevant as corroborating evidence of his testimony about what happened earlier in the day. However, what happened earlier in the day was not an issue in the case. The disputed issue was whether defendant knowingly possessed ammunition when he was pulled over by the deputies. Defendant's daughter's testimony would support defendant's testimony that he had not gone shooting earlier in the day and establish that who had gone shooting. However, what family members had gone shooting with defendant's uncle and cousin earlier in the day was irrelevant to the issue of defendant's knowledge of the ammunition in the vehicle he was driving. Likewise, the daughter's knowledge of the ammunition in the backpack in defendant's vehicle was equally irrelevant to the issue of defendant's knowledge.

---

*[footnote continued from previous page]*
*[footnote continued from previous page]*
daughter knew that the backpack was there. The backpack probably had ammunition in it. The backpack was used during the shooting with other family members, including his uncle and his cousin—which were using his car, you know, and just happened to leave the backpack there. [¶] So you have additional family members—apparently, everybody but the defendant in this family would know that there is a backpack that was used in the shooting down at the—in this canyon with ammunition in it but the defendant, which it would seem -- at least from a logical standpoint—would seem to undermine the defendant's testimony to begin with. So that's one problem. [¶] The second problem is that—as the Court see it—is it just doesn't go to any defense in the case as to whether or not he was or was not in possession. [¶] So, under a 352 analysis . . . I believe its probative value—legal, probative value is minimal at best and potentially harmful to the defendant himself, and the People's—as to the People's case, but even . . . to the proponent, it's marginally relevant and could undermine his own case. [¶] The prejudicial effect of having to—confuse the jury with the issue as to whether or not the defendant was shooting the firearm versus in possession of the firearm when the charge is possession of ammunition seems to be the overriding testimony, I view that as confusing the jury, and I am going to not allow testimony."

17

Defendant's offer of proof failed to contain any information that would show what defendant knew, or did not know, about the ammunition in his vehicle at the time he was pulled over.

Notwithstanding the above, the trial court correctly excluded the proposed testimony as a discovery sanction. (*Taylor v. Illinois* (1988) 484 U.S. 400, 409-410 [Adherence to standard rules of evidence may override a defendant's right to present relevant evidence in his defense].) The trial court had a reasonable basis for concluding that defendant's daughter's knowledge of the events of the day was known or readily accessible to the defense long before its disclosure to the prosecution. Having failed to offer an alternate explanation for the delay in disclosure, it is logical to presume that defendant was attempting to gain a tactical advantage over the prosecution. Moreover, defendant's daughter had a strong incentive to fabricate her testimony.

As shown by the foregoing, the court's exclusion of the proposed testimony did not preclude defendant from presenting his defense, i.e., that he had not gone shooting and that the backpack belonged to his cousin. Defendant is entitled to a reversal of his convictions only if there is a reasonable probability the verdict would have been more favorable to him if the court had admitted the proposed testimony. (See *People v. Boyette* (2002) 29 Cal.4th 381, 428; *People v. Bradford* (1997) 15 Cal.4th 1229, 1325; *People v. Watson* (1956) 46 Cal.2d 818, 836.) Based on the fact that during his stop defendant dropped his head and said in a sad voice, "'Man, I forgot that was in there,'" and "'[w]e just went shooting earlier,'" and when asked what was inside the backpack,

18

defendant replied "'probably a magazine and ammunition,'" we conclude there is no reasonable probability that the proposed testimony would have convinced the jury to reach conclusions more favorable to defendant.

## C. Instructional Error.

Defendant contends that a unanimity instruction was required because, although he was charged with a single violation of section 30305, subdivision (a), the prosecution presented evidence that he committed at least two distinct acts which could have supported the conviction. Thus, defendant argues the trial court had a sua sponte duty to give a unanimity instruction to the jury. We disagree.

"'[A]ssertions of instructional error are reviewed de novo.' [Citation.] Whether or not the trial court should have given a 'particular instruction in any particular case entails the resolution of a mixed question of law and fact,' which is 'predominantly legal.' [Citation.] As such, it should be examined without deference. [Citation.]" (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 568 (*Hernandez*).)

"A unanimity instruction is given to thwart the possibility that jurors convict a defendant based on different instances of conduct." (*Hernandez, supra*, 217 Cal.App.4th at p. 569.) "In deciding whether to give the instruction, the trial court must ask whether (1) there is a risk the jury may divide on *two discrete crimes* and not agree on any particular crime or (2) the evidence merely presents the possibility the jury may divide, or be uncertain, as to the exact way the defendant is guilty of a *single discrete crime*.

[Citation.] In the first situation, but not the second, it should give the unanimity instruction. [Citation.]" (*Id*. at p. 570.)

In the instant case, a unanimity instruction was not required because the prosecutor made a clear election as to the factual circumstances relied upon to prove the charged offense and that election was communicated to the jury. (*People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1455.) Prior to trial, the prosecutor told the court that the charge is "possession of ammunition . . . we're not charging him with using a gun, or shooting . . . ." In presenting her case, the prosecutor questioned the witnesses only about the circumstances surrounding defendant's possession of ammunition at the time he was stopped by the deputies. During closing argument, she made it clear that defendant was being charged with possessing ammunition based on the driving incident on the evening of July 31, 2013. In response, defense counsel conceded that there was ammunition in defendant's car, but argued that defendant lacked knowledge of its existence: "But the key to this case is . . . did she prove to me beyond a reasonable doubt that he knew inside that bag there was an issue. That's what this case is all about. [¶] He gets up here on the witness stand and tells you, I did not know ammunition was in—in the—the backpack. These officers said, oh, yeah, he knew." Defense counsel did not argue that defendant was not guilty of possessing ammunition earlier in the day because the prosecutor had not argued that theory. In rebuttal, the prosecutor told the jury that defendant was not being charged with shooting that day. She reiterated defendant's actions and statements observed by Deputy Enoch and emphasized defendant's statement about going shooting

earlier in the day to show that he "did know he possessed that ammunition" at the time he was stopped. Given the evidence presented at trial, coupled with the argument of both counsel, it was reasonable for the jury to understand that defendant was only being charged with possessing ammunition at the time he was stopped by the deputies.

Defendant argues that the need for a unanimity instruction became "even clearer" when the deliberating jurors asked, "Does the possession begin at the time he left the house to drive the people home or is it at any time? Willful knowledge starts when?" We disagree. The logical implication of the question is that the jury wanted to know if they had to find that defendant had knowledge of the ammunition when he initially got into his vehicle, or if they could find that he was guilty if he subsequently became aware of the ammunition. There is nothing in the note to suggest that the jury was considering the alleged shooting expedition earlier in the day. If so, the note would have asked whether possession began at the time defendant went shooting.

For the forgoing reasons, we conclude the trial court did not have a sua sponte obligation to give the jury a unanimity instruction with respect to the section 30305, subdivision (a), charge.

## D. Cumulative Error Doctrine.

Defendant contends the cumulative error doctrine requires reversal. (*People v. Harrison* (2005) 35 Cal.4th 208, 255.) In our review, we have found error only in the

21

prosecutor's repeated inquiry into whether defendant thought the deputies were "lying" about certain facts. A single error does not bring into play the cumulative error doctrine.**6**

**E. Abstract of Judgment.**

In his opening brief, defendant asserted that the abstract of judgment required correction to remove an erroneous reference to a "strike prior." The People agreed. On February 25, 2016, the trial court corrected the error and issued an amended abstract of judgment.

On April 21, 2016, defendant submitted a letter brief, filed on June 7, 2016, withdrawing the argument as to errors in the original abstract of judgment. However, defendant now contends that the amended abstract of judgment requires the following corrections: "**At Page 2, item 15**, 'Execution of Sentence Imposed,' delete the check mark from the box at 'a. ☒ other (*specify*): Ex Parte Hearing 02/25/2016' and place the check mark in the correct box at 'c. ☒ **after revocation of probation**.' . . . [¶] **At Page 2, item 16**, change the 'Date Sentence Pronounced' from '02 25 2016' to the correct date, '**04 17 2015**.' . . ." We agree. On remand, the abstract of judgment must be amended to reflect these corrections.

---

**6** Defendant also claims he received ineffective assistance of counsel because his trial attorney did not object to all of the instances of misconduct identified on appeal. Because we conclude there was no harmful misconduct, we also conclude defendant did not receive ineffective assistance of counsel. (*People v. Osband* (1996) 13 Cal.4th 622, 690-691.)

## III.  DISPOSITION

The matter is remanded to the trial court with directions to correct the abstract of judgment as stated in this opinion and forward a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


HOLLENHORST

Acting P. J.

We concur:

CODRINGTON

       J.

SLOUGH

       J.