[No. E034724. Fourth Dist., Div. Two. Nov. 19, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
DOLATAO SOLDANA ZAMBRANO, Defendant and Appellant.

**COUNSEL**

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Meagan J. Beale and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### KING, J.—

## INTRODUCTION

Defendant appeals from his conviction of selling and transporting cocaine (Health & Saf. Code, § 11352, subd. (a)) with one prior strike conviction (Pen. Code, § 667, subds. (b)–(i)) and one prison prior (Pen. Code, § 667.5, subd. (b)).[1] He contends that the trial court prejudicially erred by allowing the prosecutor to ask him, on cross-examination, whether two police officers were lying about his involvement in an alleged drug transaction, and that the prosecutor committed misconduct by asking the questions. He argues that the prosecutor's "were they lying" questions were improper because they called for his inadmissible lay opinion of the officers' veracity, invaded the province of the jury to determine the credibility of witnesses, and were irrelevant. He further contends the prosecutor compounded her error by calling one of the officers in rebuttal to testify he was not lying and would not risk his job by lying, and by again emphasizing his inadmissible testimony in her rebuttal closing argument.

We affirm. We conclude that the prosecutor's "were they lying" questions were improper, i.e., objectionable, because they sought defendant's inadmissible lay opinion about the officers' veracity, invaded the province of the jury to determine the credibility question, and were irrelevant to any issue in the case.

We further conclude that, on the facts of this case, the prosecutor committed misconduct. The prosecutor did not ask defendant one or two "were they lying" questions to clarify his testimony. Instead, she repeatedly and improperly asked defendant to opine whether the officers were lying about each aspect of their testimony that differed from defendant's. She used the "were they lying" questions to berate defendant and to inflame the passions of the jury. Moreover, she compounded her error by calling one of the officers in her rebuttal case only to say he was not lying, and by further emphasizing defendant's inadmissible lay opinion testimony in her rebuttal closing argument. Nevertheless, we conclude that the error was harmless.

## FACTS

### A. *The Prosecution Case*

On October 10, 2001, Fontana Police Officers James Escarpe and Michael Dorsey were working undercover at Truck Town in Fontana. Truck Town is a

---

[1] He was sentenced to 11 years in prison.

facility that caters to truckers. It is known to be a place where drug use, sales, and prostitution occur. In the parking lot, Escarpe and Dorsey contacted Lulann East. Dorsey asked East whether she had any "speed" (methamphetamine) for sale. East said she did not have any "speed" but could obtain "rock" (rock cocaine). Escarpe then told East he wanted $20 worth of rock cocaine.

East told the officers to wait and started walking toward two big rigs that had their beds attached. She spoke briefly to defendant, who was standing between the two rigs. Escarpe recalled that East then walked back to him and asked him whether he was a cop. He said he was not a cop and repeated his request for a "20." Dorsey said East motioned toward him and Escarpe to come to where she and defendant were standing.

Escarpe said he heard East tell defendant in English not to sell anything to him because she thought he was a cop. East told Escarpe to put his $20 on the truck bed and told defendant to give her the drugs which she, in turn, would give to Escarpe. That way, she said, defendant would not actually be selling the rock cocaine to Escarpe, and Escarpe could not arrest defendant for anything if he was a police officer. Dorsey had a hard time hearing what Escarpe and East were saying because it was noisy in the area.

At this point, Escarpe placed $20 on the truck bed. Escarpe said defendant then removed a rock of cocaine from a bag he was carrying and handed it to East, who handed it to Escarpe. As defendant took the $20, Escarpe and Dorsey arrested defendant and East. Escarpe read defendant his *Miranda*[2] rights in Spanish, and defendant answered Escarpe's questions in English. After the *Miranda* warnings, defendant denied selling the cocaine to the officers. Then defendant said he gave the cocaine to East and not to Escarpe.

B. *The Defense Case*

Defendant testified through a Spanish interpreter. He admitted he was at Truck Town on October 10, 2001, because he was working there cleaning trucks. He denied possessing, selling, or seeing any drugs, denied having any conversation with East, denied engaging in any drug transaction, and denied seeing or taking any money. He said Escarpe walked up to him, said something he did not understand, put a gun to his neck, threw him on the ground, and handcuffed him. He said he understood a little English but "not too much." He admitted he had a 1997 conviction for criminal threats.

At the conclusion of the prosecutor's cross-examination of defendant, the following colloquy occurred, during which defendant was forced to opine that Escarpe and Dorsey were lying:

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694].

"Q So when Corporal Escarpe testified that you gave cocaine to Lulann East and she gave the cocaine to him, he was lying?

"A I never had drugs on me and, um, and I did not see any money.

"Q Okay. When Corporal Escarpe testified that you gave rock cocaine to Ms. East, who in turn gave the cocaine to him, that he's, Corporal Escarpe, is lying?

"A That what, that she handed it to him?

"Q Yes.

"A I did not see the lady hand him something. [¶] . . . [¶]

"Q So in your version of events today, what you're telling this jury is that the only thing Corporal Escarpe testified to truthfully was the fact that you were arrested that night?

"A Yes ma'am.

"Q So Corporal Escarpe is lying about everything he testified to except for the fact that you were arrested that night?

"A Yes.

"Q And Officer Dorsey is lying about everything that took place that night except for the fact that you were arrested October 10th, 2001, correct?

"A Yes, ma'am.

"Q So what you want this jury to believe is that Officer Dorsey and Corporal Escarpe are going to risk their jobs and come in here and lie to them?

"[DEFENSE COUNSEL]: Objection, relevance. Speculation.

"THE COURT: Overruled.

"You can answer it, sir.

"THE WITNESS: I don't know if they are going to lose their jobs or not. I—what I am telling you is that I had no drugs nor do I use drugs. [¶] . . . [¶]

"Q So everybody is lying except for you?

"A Like I tell you, ma'am, I never had drugs and I never received money from no one, nor did I see money either.

"Q Well, you didn't answer my question, though, Mr. Zambrano, did you? I asked you, everybody is lying but you today?

"A Yes, ma'am."

C. *The Prosecution's Rebuttal*

On rebuttal, the prosecutor called only Escarpe. The entire direct examination was as follows:

"Q Corporal Escarpe, when you came in here this afternoon and told the jury what happened on October 10th, 2001, were you lying?

"A No, I was not lying.

"Q And what would happen to an officer if he was lying on the stand or lying during investigation?

"A I would be fully discredited and I will be of no use to my police unit and more likely will be terminated.

"Q And again, how many years have you worked for the Fontana Police Department?

"A Over 15 years.

"Q If you were to lie about an incident that took place, you will be putting your 15-year career at risk, correct?

"A Yes, I would.

"Q And how long has Officer Dorsey been with the police department, if you know?

"A He's going on his 10th year now.

"Q Nothing further."

## D. *The Prosecution's Rebuttal Closing Argument*

In rebuttal closing argument, the prosecutor said: "There's another jury instruction I want to focus on, too, though, and that is [CALJIC No.] 2.20—believability of a witness. *Because the defendant testified in this case, and he testified under oath that the only thing the officers were telling the truth about is the fact that he was arrested on October 10, 2001.* [¶] One of the factors that you can take into consideration when determining whether or not you want to believe a witness who has testified is whether that person has a felony conviction.

"Well, Corporal Escarpe doesn't have a felony conviction. Officer Dorsey does not have a felony conviction, but the defendant does. He testified he has a conviction for the crime of criminal threats. That conviction was in 1997. Then he explained to you that he had a problem with his spouse.

"You can also take into consideration the existence or nonexistence of a bias or motive. Well, clearly the defendant has a *bias to tell you that the officers were lying. He has a motive to tell you the officers were lying.* He is the one on trial. He is the one charged with selling cocaine, and he is the one who did, in fact, sell cocaine.

"Corporal Escarpe told you he wasn't lying. He has been an officer for 16 years. If you think that those officers are going to come in here and risk their careers over $20.00 of rock cocaine, then you left your common sense outside the doors when you walked in here. Because why would the officers do that? They would be fired. You have 16 years of experience, and you are going to blow your career on $20.00 of rock cocaine." (Italics added.)

## DISCUSSION

### A. *Preservation of Issues for Appellate Review; Ineffective Assistance*

At the threshold, the People contend defendant forfeited or failed to preserve his prosecutorial misconduct claim for appellate review, because he did not object to the prosecutor's "were they lying" questions, rebuttal examination of Escarpe, or closing remarks to the jury. Defendant argues that he preserved this issue for appeal because his counsel generally objected to the prosecutor's "were they lying" questions on the grounds of speculation and relevance. Alternatively, he argues that his counsel rendered ineffective assistance by failing to interpose a "sufficient" or specific objection on this ground.

We conclude that defendant is excused from making a timely objection or requesting a curative admonition regarding the prosecutor's alleged misconduct because it appears both would have been futile. In any event, we conclude that defense counsel did not render ineffective assistance by failing to object to the prosecutor's "were they lying" questions, her rebuttal examination of Escarpe, or her closing remarks to the jury.

### 1. *The Futility Exception*

A defendant may not raise a claim of prosecutorial error on appeal unless he made a timely and specific objection to the alleged misconduct and requested that the jury be admonished to disregard the impropriety. (*People v. Hill* (1998) 17 Cal.4th 800, 820 [72 Cal.Rptr.2d 656, 952 P.2d 673].) "[But] [a] defendant will be excused from the necessity of either a timely objection and/or a request for admonition if either would be futile. [Citations.]" (*Ibid.*)

Here, defense counsel failed to object specifically to the prosecutor's "were they lying" questions on any ground. Instead, he objected about two-thirds of the way through the line of questions, on grounds of speculation and relevance, when the prosecutor asked defendant whether the officers would risk their jobs by lying to the jury. The objection was overruled, but it should have been sustained. There was no showing that defendant had any way of knowing whether the officers would risk losing their jobs by lying to the jury.

Based on this erroneous ruling, it appears that objections to the prosecutor's "were they lying" questions, rebuttal examination of Escarpe, and closing remarks to the jury would have been futile. If the trial court believed it was proper to ask defendant whether the officers would risk losing their jobs by lying to the jury, then it must have believed that the prosecutor's entire line of "were they lying" questions, rebuttal examination of Escarpe, and closing argument remarks were also proper.

Under these circumstances, defendant was excused from objecting, stating the grounds for his objections, and requesting curative admonitions concerning the prosecutor's alleged misconduct. We are mindful that the futility exception to the rule requiring an objection and request for curative admonition is to be applied only in "unusual circumstances." (*People v. Hill, supra,* 17 Cal.4th at p. 821; *People v. Riel* (2000) 22 Cal.4th 1153, 1212–1213 [96 Cal.Rptr.2d 1, 998 P.2d 969].) Indeed, defense counsel should have objected earlier and directly to the prosecutor's "were they lying" questions. Nevertheless, we believe the record supports applying the futility exception.

### 2. Ineffective Assistance

■ In any event, even if the objections and requests for curative admonitions should have been made, defense counsel did not render ineffective assistance by failing to make the appropriate objections and requests. "To secure reversal of a conviction upon the ground of ineffective assistance of counsel under either the state or federal Constitution, a defendant must establish (1) that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, *and* (2) that there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003 [108 Cal.Rptr.2d 291, 25 P.3d 519], italics added.)

Regarding the first component of his ineffective assistance claim, defendant notes that "[i]n California, no published case specifically has decided whether it is misconduct for a prosecutor to ask a defendant on cross-examination whether another witness was lying." Indeed, in view of this lack of authority, the court in *People v. Foster* (2003) 111 Cal.App.4th 379, 385 [3 Cal.Rptr.3d 535] (*Foster*) held that the defendant could not establish that his counsel's failure to object to "were they lying" questions "fell below an objective standard of reasonableness."

We agree with *Foster* on this point. Defendant cannot establish that his counsel rendered ineffective assistance by failing to object to and request curative admonitions concerning the prosecutor's alleged misconduct, because at the time of trial there was a lack of clearly established California authority that "were they lying" questions were improper and constituted prosecutorial misconduct.

## B. Prosecutorial Misconduct

### 1. The Unsettled Law

■ As the *Foster* court explained, courts have reached varying conclusions on whether it is misconduct for a prosecutor to ask a defendant on cross-examination whether another witness was lying. (*Foster, supra,* 111 Cal.App.4th at pp. 383–385.) "One line of cases holds that asking 'were they lying' questions is always misconduct. (See, e.g, *United States v. Sanchez* (9th Cir. 1999) 176 F.3d 1214; *United States v. Sullivan* (1st Cir. 1996) 85 F.3d 743; *United States v. Boyd* (D.C. Cir. 1995) 312 U.S. App. D.C. 35 [54 F.3d

868]; *United States v. Richter* (2d Cir. 1987) 826 F.2d 206; *Scott v. United States* (D.C.App. 1993) 619 A.2d 917; *State v. Flanagan* (N.M.App. 1990) 111 N.M. 93 [801 P.2d 675]; *State v. Casteneda-Perez* (Wash.App. 1990) 61 Wn.App. 354 [810 P.2d 74].) The courts in these cases explain that these questions infringe on the jury's right to make credibility determinations [citations], or that the questions are misleading because they suggest that the only explanation for the discrepancy between defendant's testimony and the other witness' testimony is that one of them is lying [citations]. Moreover, the questions might be considered misleading or calling for a conclusion in that they suggest that the defendant can know what another witness was thinking." (*Foster, supra,* at p. 384.)

█ "Another line of cases holds that asking 'were they lying' questions is not misconduct. [Citations.] The courts in these cases explain that these questions ' " 'merely emphasize[] the conflict in the evidence, which it was the jury's duty to resolve.' " ' . . . [¶] A third line of cases holds that 'were they lying' questions are neither categorically improper nor categorically proper, but are proper under certain limited circumstances." (*Foster, supra,* 111 Cal.App.4th at pp. 384–385.) In the third line of cases, the questions "may be appropriate when the only possible explanation for the defendant's inconsistent testimony is that either the defendant or the other witness is lying [citations], or when the defendant has opened the door during direct examination by testifying about the veracity of other witnesses [citations], or when the 'were they lying' questions 'have a probative value in clarifying a particular line of testimony' [citations]." (*Id.* at p. 385.)

The *Foster* court did not determine which, if any, of these lines of cases applied in California. Here we address the impropriety of the prosecutor's "were they lying" questions and, more broadly, the prosecutorial misconduct issue. In this regard, it is useful to distinguish between the admissibility of the evidence that "were they lying" questions seek to elicit, and the broader question of whether and, if so, under what circumstances asking such questions constitutes prosecutorial misconduct.

### 2. *The Prosecutor's "Were They Lying" Questions Were Improper*

█ Our state Supreme Court has recognized that a lay witness's opinion about the veracity of another person's particular statements is *inadmissible* and *irrelevant* on the issue of the statements' credibility. (*People v. Melton* (1988) 44 Cal.3d 713, 744 [244 Cal.Rptr. 867, 750 P.2d 741].) The high court

reasoned that such lay opinion testimony invades the province of the jury as the ultimate fact finder, is generally not helpful to a clear understanding of the lay witness's testimony, is not "properly founded character or reputation evidence," and does not bear on "any of the other matters listed by statute as most commonly affecting credibility" in Evidence Code section 780, subdivisions (a) through (k). (*People v. Melton, supra,* at p. 744.) The high court therefore concluded that "such an opinion has no 'tendency in reason' to disprove the veracity of the statements." (*Ibid.*; see also Evid. Code, §§ 210, 350, 780 & 800; *People v. Sergill* (1982) 138 Cal.App.3d 34, 39–40 [187 Cal.Rptr. 497]; *People v. Smith* (2003) 30 Cal.4th 581, 628 [134 Cal.Rptr.2d 1, 68 P.3d 302] [jury as capable as expert to assess credibility of defendant's statement].)

 "Cross-examination—described by Wigmore as ' "the greatest legal engine ever invented for the discovery of truth" ' [citations]—has two purposes. Its chief purpose is 'to test the credibility, knowledge and recollection of the witness. [Citations.] [¶] The other purpose is to elicit additional evidence.' [Citations.]" (*Fost v. Superior Court* (2000) 80 Cal.App.4th 724, 733 [95 Cal.Rptr.2d 620].) But a proper attack on a witness's credibility does not consist solely of berating the witness; it requires presenting or eliciting additional evidence which bears on the witness's credibility. "Unless precluded by statute, any *evidence* is admissible to attack the credibility of a witness if it will establish a *fact* that has a tendency in reason to disprove the truthfulness of the witness's testimony. . . . [¶] If a defendant takes the stand and generally denies the crime with which he is charged, the permissible scope of cross-examination is 'very wide.' [Citation.] When a defendant voluntarily testifies, the prosecutor 'may fully amplify his testimony by inquiring into the *facts and circumstances* surrounding his assertions, or by introducing evidence through cross-examination which explains or refutes his statements or the inferences which may necessarily be drawn from them." (*People v. Humiston* (1993) 20 Cal.App.4th 460, 479 [24 Cal.Rptr.2d 515], italics added.)

Here, the prosecutor's "were they lying" questions were inadmissible because they were irrelevant to any issue in this case. The questions did not clarify defendant's prior testimony, because he had already testified that his recollection of the alleged drug transaction differed from the officers' in every material respect. Nor did the questions inquire into any *facts or circumstances* surrounding defendant's testimony, or develop independent evidence which

ran contrary to his testimony. The questions served no purpose other than to elicit defendant's inadmissible lay opinion concerning the officers' veracity. The questions merely forced defendant to opine, without foundation, that the officers were liars.

### 3. The "Were They Lying" Questions Constituted Prosecutorial Misconduct

■ " 'The applicable federal and state standards regarding prosecutorial misconduct are well established. " 'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process." ' " [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves " ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " [Citation.]' [Citation.]" (*People v. Smithey* (1999) 20 Cal.4th 936, 960 [86 Cal.Rptr.2d 243, 978 P.2d 1171] (*Smithey*).)

■ " 'A prosecutor is held to a standard higher than that imposed on other attorneys because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the state. [Citation.] . . . [T]he prosecutor represents "a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." [Citation.]' " (*People v. Hill, supra,* 17 Cal.4th at p. 820.) "A prosecutor has a duty to prosecute vigorously. 'But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.' " (*People v. Pitts* (1990) 223 Cal.App.3d 606, 691 [273 Cal.Rptr. 757].)

As noted above, the first line of cases cited and discussed in *Foster* holds that asking "were they lying" questions *always* constitutes misconduct, in part because it is the jury's function to determine credibility questions. (*Foster, supra,* 111 Cal.App.4th at p. 384; *United States v. Sanchez, supra,* 176 F.3d at p. 1219; *United States v. Sullivan, supra,* 85 F.3d at pp. 749–750; *United States v. Boyd, supra,* 312 U.S. App. D.C. 35; *United States v. Geston* (9th Cir. 2002) 299 F.3d 1130, 1136; see also *United States v. Combs* (9th Cir. 2004) 379 F.3d 564, 572–575.) Concomitantly, this line of cases is based on

the rule that "opinion evidence regarding a witness' credibility is inadmissible." (*U.S. v. Sanchez-Lima* (9th Cir. 1998) 161 F.3d 545, 548.) Indeed, our state Supreme Court has recognized that asking clearly improper questions constitutes misconduct. (*Smithey, supra,* 20 Cal.4th at pp. 960–961.)

■ Nevertheless, we disagree that it is *always* misconduct for a prosecutor to ask "were they lying" questions. Although the questions generally elicit inadmissible and irrelevant lay opinion testimony (*People v. Melton, supra,* 44 Cal.3d at p. 744), they may be allowable in limited circumstances (see *Foster, supra,* 111 Cal.App.4th at p. 385 [discussing "third line of cases" holding that "were they lying" questions are not always categorically proper nor categorically improper]). For example, the questions may be appropriate when necessary to clarify a particular line of testimony. (*Ibid.,* citing *State v. Pilot* (Minn. 1999) 595 N.W.2d 511, 518 and *State v. Hart* (Mont. 2000) 15 P.3d 917, 924 [2000 MT 332, 303 Mont. 71].) Even if a "were they lying" question calls for an inadmissible opinion on another person's veracity, asking one or two such questions, if necessary to clarify a witness's testimony, may not be a "reprehensible method" of persuading the jury. (*Smithey, supra,* 20 Cal.4th at pp. 960–961.)

We also disagree that asking "were they lying" questions *never* constitutes misconduct. (*Foster, supra,* 111 Cal.App.4th at p. 384.) This case illustrates how "were they lying" questions can serve no evidentiary purpose and can be abused. Here, the prosecutor did not ask one or two "were they lying" questions to clarify defendant's testimony. Defendant had already testified, quite clearly, that his recollection of the events surrounding the alleged drug transaction differed from the officers' in every material respect. Thus, before the prosecutor began her cross-examination, the jury must have understood that defendant was categorically denying the officers' version of events, and that the jury would have to decide who was telling the truth. Nevertheless, the prosecutor repeatedly and painstakingly asked defendant whether the officers were "lying" about every aspect of their testimony that differed from defendant's testimony. She used the questions to berate defendant before the jury and to force him to call the officers liars in an attempt to inflame the passions of the jury. This was misconduct.

The misconduct was exacerbated when the prosecutor called Escarpe in rebuttal to testify that he was not lying and would not risk losing his job by lying. This testimony only served to emphasize defendant's inadmissible opinion testimony that Escarpe was lying. The misconduct was further compounded when the prosecutor revisited defendant's inadmissible testimony in her rebuttal closing argument. There, she attacked defendant's credibility, noting that he had "testified under oath that the only thing the officers were telling the truth about is the fact that he was arrested . . . ."

(*United States v. Richter, supra,* 826 F.2d at pp. 208–209 [misconduct consisted of improper questions, improper rebuttal testimony, and improper closing argument].)

Although it cannot be said that the prosecutor's misconduct comprised a pattern of conduct so egregious that it denied defendant due process, it can be said that the prosecutor used a "reprehensible method" to persuade the jury on the issue of defendant's and the officers' credibility. The prosecutor thus committed misconduct under state law. (*Smithey, supra,* 20 Cal.4th at p. 960.)

### 4. *The Prosecutor's Misconduct Was Harmless*

A defendant's conviction will not be reversed for prosecutorial misconduct unless it is reasonably probable that the jury would have reached a result more favorable to the defendant had the misconduct not occurred. (*People v. Crew* (2003) 31 Cal.4th 822, 839 [3 Cal.Rptr.3d 733, 74 P.3d 820].) Here, the prosecutor used a "reprehensible method" to persuade the jury that defendant was not credible. (*Smithey, supra,* 20 Cal.4th at p. 960.) She forced defendant to call the officers liars, then emphasized his inadmissible lay opinion testimony in her rebuttal case and closing argument. Nevertheless, it is not reasonably probable that the jury would have reached a result more favorable to defendant had the misconduct not occurred.

The evidence against defendant consisted solely of the officers' testimony about defendant's role in the drug transaction, and defendant categorically denied each material aspect of the officers' testimony. However, defendant's explanation of what occurred at Truck Town was patently unreasonable. He testified that Escarpe simply walked up to him, said something he did not understand, put a gun to his neck, threw him on the ground, and handcuffed him. He denied seeing any drugs or money. But he did not offer any explanation for why Escarpe may have acted as he did.

Thus, the jury had the choice of believing the officers' testimony, or believing defendant's unreasonable version of events. Even if the prosecutor had not committed misconduct, it is not reasonably probable that the jury would have believed defendant's version of events.

## DISPOSITION

The judgment is affirmed.

Hollenhorst, Acting P. J., and Ward, J., concurred.