Filed 4/28/21  P. v. Ortiz CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B301348 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA146242) |
| v. | |
| JULIO CESAR ORTIZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa P. Magno, Judge.  Affirmed.

Lise M. Breakey, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Michael C. Keller and Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Julio Cesar Ortiz[1] appeals from a judgment of conviction entered after the jury found him guilty of possession of a firearm by a felon and unlawful possession of ammunition. Ortiz contends the trial court violated his due process rights by denying his motion for a mistrial after the prosecutor questioned Ortiz about his bail status, whether his prior conviction was a strike, and whether he served time in prison. Ortiz also argues the prosecutor committed misconduct by badgering him in cross-examination as to whether the sheriff's deputy who had pulled him over was lying and by eliciting the deputy's testimony that he would not risk losing his job by lying. Finally, Ortiz asserts the trial court abused its discretion under Evidence Code section 352 and violated his confrontation rights under the Sixth and Fourteenth Amendments by precluding defense counsel from questioning the deputy about a complaint made against the deputy. Although the prosecutor's questioning was improper, there was no prejudice. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Prosecution Case*

On April 24, 2018 at approximately 4:00 a.m. Los Angeles County Sheriff's Deputy Jaime Fernandez was in his patrol car on patrol in the City of Lynwood. Deputy Fernandez saw a white car with dealer's license plates make a right turn without signaling. He conducted a traffic stop to issue a citation.

---

[1] Ortiz's trial attorney identified Ortiz as Julio Cesar Chavez in his notice of appeal. However, Ortiz testified his name is Julio Cesar Ortiz, and the information, verdict forms, and abstract of judgment identify him as Julio Cesar Ortiz.

Deputy Fernandez testified Ortiz was the driver of the car. Jose Rodriquez and Victor Perez were passengers. When Deputy Fernandez asked Ortiz for his driver's license, Ortiz stated his license was suspended and "he had a warrant out of San Bernardino." Deputy Fernandez asked Ortiz to exit the car and "escorted him out" by touching him on his forearm. Deputy Fernandez searched Ortiz and recovered two .32-caliber bullets from Ortiz's left pocket. Ortiz told Deputy Fernandez "the bullets were for the range." Deputy Fernandez handcuffed Ortiz, placed him in the patrol car, and called for backup. Two other deputies arrived in their patrol cars approximately two minutes later to help detain the three men. Deputy Fernandez searched Ortiz's car and noticed the console cover near the steering wheel was slightly ajar. He found a gun "wedged into the console." The .32-caliber semi-automatic gun was unloaded with "two magazines wedged in the holster." Each magazine was loaded with six bullets. Deputy Fernandez took photographs of the gun, magazines, and bullets in the magazines, but not the bullets recovered from Ortiz's pocket. The photographs were shown to the jury and admitted into evidence.

Deputy Fernandez returned to his patrol car where Ortiz was seated and read a *Miranda*[2] waiver of rights form to him. Ortiz circled "yes" and wrote his initials to indicate he understood the advisements and wanted to "talk about what happened." Deputy Fernandez said to Ortiz, "I recovered a firearm in the vehicle. It was already rendered safe and placed in the backseat of my patrol car." Ortiz responded, "Yeah, the gun is mine." Ortiz added, "It wasn't loaded." Ortiz signed his name on the waiver

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

form and wrote on the back of the form, "The gun is mine." During booking, Ortiz told Deputy Fernandez he carried the gun for protection.

B.    *The Defense Case*

Ortiz testified that at approximately 2:00 or 3:00 on the morning of April 24, 2018, he was driving in his car with his two friends after leaving a sports bar. Ortiz had purchased the car from a dealership on March 5. The car had dealer's license plates and a temporary document reflecting the sale by the dealer on the right side of the windshield. A photograph of the front windshield with the sale document was shown to the jury and introduced into evidence.[3]

As he was driving, Ortiz heard sirens and a command on the patrol car's loudspeaker to pull over. When Ortiz pulled over, Deputy Fernandez approached Ortiz's car with his gun out of its holster and pointed down. Deputy Fernandez asked Ortiz for his license and car registration. Ortiz responded, "I don't have my license. It's actually suspended, sir." Deputy Fernandez told Ortiz to place his hands on the steering wheel, and Ortiz complied. Deputy Fernandez opened the car door and grabbed Ortiz's arm to pull him out of the car. Deputy Fernandez pulled Ortiz's left arm behind Ortiz's back and placed his gun against Ortiz's neck. Deputy Fernandez told Ortiz's friends, "Do not move. If you guys move, I will blow his head off." Deputy Fernandez handcuffed Ortiz, placed him on the ground, and called for backup. When the other deputies arrived, they searched Ortiz's friends. The deputies

_____

[3]    On cross-examination, Deputy Fernandez testified he did not notice the document affixed to the car's windshield.

placed Ortiz in in the backseat of Deputy Fernandez's car and his two friends in another patrol car.

Deputy Fernandez and another deputy searched Ortiz's car "for like an hour." Deputy Fernandez then approached Ortiz and asked, "Whose car is this?" Ortiz replied, "Mine. It's my car." Deputy Fernandez stated, "Three or one goes to jail." Ortiz understood that meant "one of us goes to jail or all three of us go to jail." Ortiz responded, "Why? My car is not stolen." Deputy Fernandez said, "No. I found something." But Deputy Fernandez did not show Ortiz what he had found. Deputy Fernandez then drove Ortiz to the Lynwood sheriff's station. Ortiz first learned he was charged with possessing a gun and ammunition at the station when he saw the other deputies "like celebrating for a gun," and they asked him, "Where did you get it at? How did you get that one?"

Ortiz denied he had two bullets in his pocket. Further, Deputy Fernandez did not give him a *Miranda* waiver form to sign or initial. Ortiz did not write, "The gun was mine."

Ortiz admitted that on January 8, 2004 he pleaded no contest to possession or purchase of cocaine for sale; on January 5, 2006 he pleaded guilty to attempted carjacking; and on February 27, 2011 he pleaded guilty to commercial burglary.

On cross-examination, Ortiz stated he went to the Lynwood sheriff's station to make a complaint against Deputy Fernandez for putting a gun to his neck, but "they [had] him waiting for a while." Ortiz left before his turn because he had to pick up his daughter. He did not again attempt to file a complaint.

C.    *Rebuttal Testimony*

On rebuttal, Deputy Fernandez denied he placed a gun on Ortiz's neck.  He also denied he had planted a gun in Ortiz's car or ammunition in Ortiz's pocket.  He did not forge Ortiz's signature or initials on the *Miranda* waiver form or write the confession.  He would jeopardize his employment if he planted evidence and falsely brought a case against Ortiz.

D.    *The Verdict and Sentence*

The jury found Ortiz guilty of possession of a firearm by a felon (Pen. Code,[4] § 29800, subd. (a)(1); count 1) and unlawful possession of ammunition (§ 30305, subd. (a)(1); count 2).  In a bifurcated proceeding, Ortiz admitted he suffered a 2006 conviction of attempted carjacking (§§ 215, 664).

The trial court sentenced Ortiz on count 1 to 32 months in state prison (the lower term of 16 months doubled under the three strikes law (§ 667, subds. (b)-(j))).  The court imposed a consecutive 16-month term on count 2 (one-third the middle term doubled), but the court stayed it pursuant to section 654.

Ortiz timely appealed.

## DISCUSSION

A.    *Prosecutorial Misconduct*

"""A prosecutor commits misconduct when his or her conduct either infects the trial with such unfairness as to render the subsequent conviction a denial of due process, or involves deceptive or reprehensible methods employed to persuade the trier

---

[4]    Further statutory references are to the Penal Code.

of fact.""" (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 657; accord, *People v. Hoyt* (2020) 8 Cal.5th 892, 943.) "'Although it is misconduct for a prosecutor *intentionally* to elicit inadmissible testimony [citation], merely eliciting evidence is not misconduct.'" (*People v. Chatman* (2006) 38 Cal.4th 344, 379-380 (*Chatman*); accord, *People v. Hawthorne* (2009) 46 Cal.4th 67, 98 (*Hawthorne*), disapproved on another ground in *People v. McKinnon* (2011) 52 Cal.4th 610, 637-643.)[5] "To preserve a claim of misconduct for appeal, a defendant must make a timely objection and ask the court to admonish the jury, unless an objection would have been futile and a request for admonition ineffective." (*People v. Flores* (2020) 9 Cal.5th 371, 403 (*Flores*); accord, *People v. Potts* (2019) 6 Cal.5th 1012, 1035.)

We review a trial court's rulings on prosecutorial misconduct for an abuse of discretion. (*People v. Peoples* (2016) 62 Cal.4th 718, 792-793; *People v. Alvarez* (1996) 14 Cal.4th 155, 213.) Even if there was prosecutorial misconduct, a defendant's conviction will not be reversed "'unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct.'" (*Flores, supra*, 9 Cal.5th at p. 403; accord, *People v. Young* (2019) 7 Cal.5th 905, 932-933.)

---

[5]     The Supreme Court in *Chatman* observed that where the prosecutor elicits inadmissible evidence but does not do so intentionally, this is not a question of prosecutorial misconduct, but rather, is more properly analyzed as a question of whether the evidence was admissible. (*Chatman, supra*, 38 Cal.4th at pp. 379- 380.) However, the court noted the analysis would be the same under either rubric. (*Ibid.*)

B.  *Ortiz Was Not Prejudiced by the Prosecutor's Improper Questions About Ortiz's Bail Status, Prior Strike Conviction, and Prison Time*

1.  *Trial court proceedings*

The prosecutor asked Ortiz during cross-examination whether he had posted bond. Before Ortiz could answer, the trial court sustained defense counsel's objection. The prosecutor also asked Ortiz whether his prior conviction for attempted carjacking was a strike. The court sustained defense counsel's objection, but Ortiz responded that it was. The court then struck Ortiz's answer. The prosecutor followed up, "You were convicted of that and you went to state prison?" The court sustained defense counsel's objection, and Ortiz did not answer.

At sidebar, the trial court asked the prosecutor, "This line of questioning, beginning with the fact that there was a strike and now that [Ortiz] went to prison, what is the relevance of both information?" The prosecutor answered, "It's just—it's just what happened. I didn't think that those items were excluded. I know that the facts—that the underlying convictions were excluded or where they were, et cetera, but that's—." The court interjected, "Usually, it's the prosecution who insists on nothing being mentioned about a strike or any prior conviction being strikes. You brought it up on your own, but I have to believe there's a reason for it. [¶] But any mention of anything beyond the fact that he was convicted of a felony is irrelevant. Remember, it's coming in for impeachment purpose[s] and case law is very clear as it relates to impeaching a witness; it's merely the conviction of a felony and not anything more."

At this point defense counsel stated, "At no time since I've been an attorney have I ever seen anybody ask clients about

8

prison strikes or—or bail. All this stuff is prejudicial, it's not probative. I would ask the court for a mistrial." The prosecutor responded, "[A]s to the strikes and the prison, I will accept a limiting admonition—motion to strike and ask the court then to admonish the jury. . . . I wouldn't object to any kind of pinpoint instruction to ignore that. [¶] As for the bond, the reason I was asking for was because he has not—he has spent a lot of money on this case, this case is 14 months old and with all of these and the amount of time he has spent and the—to then not make a complaint, that's why I was just trying to establish. And so the court and the defense attorney shut me down on there so I just moved on."

The court stated, "So let me deal with one issue at a time. [¶] The more recent one, which is inquiring about the bond, nothing precludes you from questioning him on what actually you were doing, in that 'Did you file a complaint? Did you file a lawsuit?' Those are ripe for you to cross-examine him on. [¶] If he says, I didn't because I didn't have the money then that's when it can come in, but you didn't establish that. So . . . I will sustain my ruling in that without further grounds, it's irrelevant that he bonded out. So that's to clarify that. [¶] As to the motion for mistrial, I actually think it hurts the People, frankly. . . . When the word 'strike' was mentioned, jurors are often wondering is this a third-strike case? Would this relatively minor case . . . be the one to send him [away] . . . for 25 years to life. I don't actually think it prejudices [Ortiz] in any way, even collectively, regarding it and I will also admonish the jurors. [¶] And if you can prepare a pinpoint instruction, if you want me to advise them that or to remind them that questions asked [are not] evidence. [¶] Sometimes, strategically, I know lawyer's position is it's better to

9

just not ring the bell again and just ignore it because it's really questions. None of the answers were indicated so there's really nothing to strike in terms of answers. But whatever you feel is appropriate, I'm fine with giving it. [¶] But the motion for mistrial is denied at this point." Defense counsel did not request a pinpoint instruction.

> 2. *Ortiz failed to show prejudicial misconduct*

We agree with Ortiz the prosecutor asked improper questions about whether Ortiz had posted a bond, Ortiz's prior strike conviction, and whether Ortiz served prison time. Although the prosecutor should have known this line of questioning was improper, it does not appear from the record that the prosecutor intentionally elicited inadmissible evidence. (See *Hawthorne, supra*, 46 Cal.4th at p. 98; *Chatman, supra*, 38 Cal.4th at pp. 379-380.) Further, Ortiz has not shown it is reasonably probable the jury would have reached a more favorable result absent the questioning. (*Flores, supra*, 9 Cal.5th at p. 403; *People v. Young, supra*, 7 Cal.5th at pp. 932-933.) The trial court sustained defense counsel's objections to the questions about posting bond and prison time before Ortiz could answer. Ortiz admitted his prior conviction for attempted carjacking was a strike, but his answer was stricken by the trial court. The trial court instructed the jury with CALCRIM No. 222 to disregard any questions as to which the court sustained an objection and any testimony stricken from the record. We presume the jury followed the court's instructions. (*Flores*, at p. 405; *People v. Potts, supra*, 6 Cal.5th at p. 1037.) And Ortiz's admission on cross-examination that attempted carjacking is a strike is only minimally more prejudicial than his testimony that he was convicted of attempted carjacking.

10

The trial court therefore did not abuse its discretion in denying Ortiz's motion for a mistrial based on prosecutorial misconduct.  (*People v. Clark* (2011) 52 Cal.4th 856, 990 ["'A trial court should grant a mistrial only when a party's chances of receiving a fair trial have been irreparably damaged, and we use the deferential abuse of discretion standard to review a trial court ruling denying a mistrial.'"]; *People v. Cowan* (2010) 50 Cal.4th 401, 459 [trial court did not abuse its discretion in denying motion for mistrial in absence of showing of prejudice].)

C.    *The Prosecutor's Improper Questions Concerning Whether Deputy Fernandez Was Lying Do Not Warrant Reversal*

1.    *Trial court proceedings*

The prosecutor asked Ortiz during cross-examination, "So basically you're saying that . . . what Deputy Fernandez said on the stand is a complete lie?"  Ortiz answered, "I am not calling it a lie.  He's probably a mistake.  Mistaken."  The prosecutor then asked Ortiz the following series of questions:

"Q    So when [Deputy Fernandez] said he found the bullets in your pocket, that was a lie, right?

"A    Yes.

"Q    When he said that he found the gun in your car, that was a lie?

"A    Yes.  I never seen that gun before.

"Q    When he said that you signed a *Miranda* form and confessed that the gun was yours, that was a lie then?

"A    It's also a lie.

"Q    So he . . . [¶] . . . [¶] totally made that up?

"A    Yes, he did.

11

"Q And when he said that you—you told him that you used that gun—that you have that gun for protection, that was a lie?

"A Yes.

"Q And that when he told us about how you said that the gun wasn't even loaded, that was a lie too?

"A Yes. I never had no—I didn't even thought [*sic*] that there was a gun that I was getting arrested for.

"Q So the whole time that this deputy is testifying, not just here but at the preliminary hearing, . . . [¶] . . . [¶] he is totally lying under oath; right?

"A Yes.

"Q And he's putting a case on you?

"A Yes."

On rebuttal, the prosecutor asked Deputy Fernandez if he had planted the gun or ammunition or forged the *Miranda* waiver form, to which Deputy Fernandez responded he had not. The prosecutor then inquired, "If you were to put a gun to someone's neck and tell the occupants of a car 'don't move or I'm going to blow his head off,' would you be fired for that?" Deputy Fernandez initially answered "No," then when asked if he would "possibly be fired for that," he answered, "Possibly."

The prosecutor then asked the following questions:

"Q Would your employment be in jeopardy if you did conduct yourself in such a manner?

"A Yes, perhaps.

"Q And would your employment be in jeopardy if you planted evidence and falsely brought a case against a defendant?

"A Yes."

12

At this point defense counsel asserted repeated objections on relevance grounds, but the trial court overruled the objections and allowed the following questions:

"Q    Would your employment be in jeopardy— [¶] . . . [¶] if you wrongfully arrested somebody?

"A    Yes.

"Q    And can you afford to lose your job?  [¶] . . . [¶]

"A    No.

"Q    You have a family to feed?

"A    Yes."

In her closing argument, the prosecutor argued as to Deputy Fernandez's veracity:  "When someone tells a lie like that, they usually have a motive—don't they—to put their entire life on the line.  Not life, but their career.  And that would perjury, right?  He comes to court, he sits in front of you all and the judge, myself and takes an oath to tell the truth and then totally lie about that, not just today but at the preliminary hearing as well?  And he would do that to someone he's never met?  Just to put a case on somebody he's never met?  It doesn't make any sense and it doesn't add up."

In her rebuttal argument the prosecutor asserted, "The conduct that [Ortiz] alleges as to what Deputy Fernandez did— assaulted him with a firearm, made a criminal threat, planted or fabricated evidence, forged a written confession, wrongfully arrested him, brought false charges against him, lied under oath at the preliminary hearing, lied under oath to all of you—and, yet, the first time that he tells anybody about this story is 14 months later, here, at trial, yesterday."  The prosecutor added, "Those are heinous accusations that he's made.  And I have never said that Deputy Fernandez is a great guy, but there is no doubt that he

13

would be subject to criminal prosecution, losing his job, et cetera, if he did the things that the defendant alleged he did."

### 2. *The prosecutor's improper questioning was not prejudicial*

"[C]ourts should carefully scrutinize 'were they lying'" questions in context. They should not be permitted when argumentative, or when designed to elicit testimony that is irrelevant or speculative. However, in its discretion, a court may permit such questions if the witness to whom they are addressed has personal knowledge that allows him to provide competent testimony that may legitimately assist the trier of fact in resolving credibility questions." (*Chatman, supra*, 38 Cal.4th at p. 384; accord, *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 319 (*Gonzales and Soliz*).) The *Chatman* court explained, "If a defendant has no relevant personal knowledge of the events, or of a reason that a witness may be lying or mistaken, he might have no relevant testimony to provide. No witness may give testimony based on conjecture or speculation. (See Evid. Code, § 702.) Such evidence is irrelevant because it has no tendency in reason to resolve questions in dispute. (Evid. Code, § 210.)" (*Chatman*, at p. 382.) But "[a] party who testifies to a set of facts contrary to the testimony of others may be asked to clarify what his position is and give, if he is able, a reason for the jury to accept his testimony as more reliable." (*Ibid.*) The *Chatman* court reasoned, "A defendant who is a percipient witness to the events at issue has personal knowledge whether other witnesses who describe those events are testifying truthfully and accurately. As a result, he might also be able to provide insight on whether witnesses whose

14

testimony differs from his own are intentionally lying or are merely mistaken." (*Ibid*.; accord, *Gonzales and Soliz*, at p. 319.)

Ortiz concedes defense counsel did not object to the prosecutor's cross-examination of Ortiz regarding whether Deputy Fernandez was lying and "putting a case" on him. Ortiz has therefore forfeited his claim of prosecutorial misconduct. (*Gonzales and Soliz, supra*, 52 Cal.4th at p. 318 [failure to object to "were they lying" questions forfeited claim on appeal]; *Hawthorne, supra*, 46 Cal.4th at p. 97 [same].) But even if the claim were preserved for appeal, the prosecutor's misconduct did not rise to the level of reversible error. (*Gonzales and Soliz,* at p. 319.)[6]

The prosecutor's "was he lying" questions were argumentative and improperly elicited speculative testimony because Ortiz "did not personally know or have any connection with" Deputy Fernandez. (See *People v. Gonzales and Soliz, supra*, 52 Cal.4th at p. 319; *People v. Zambrano* (2004) 124 Cal.App.4th 228, 240-241 (*Zambrano*) [prosecutor's "were they lying" questions were irrelevant and "served no purpose other than to elicit defendant's inadmissible lay opinion concerning the officers' veracity"].) Thus, Ortiz could not provide any insight on whether Deputy Fernandez "might be inaccurate or mistaken, or whether he knew of any bias, interest, or motive for [Deputy Fernandez] to be untruthful." (*Chatman, supra*, 38 Cal.4th at p. 383.) In *Chatman*, for example, the Supreme Court found the "were they lying" questions appropriate because the defendant knew the other witnesses, who were friends or relatives, and the

---

[6]     Because we decide Ortiz's contentions on the merits we do not reach whether it would have been futile for defense counsel to object to the prosecutor's questioning of Ortiz or Ortiz's claim of ineffective assistance of counsel.

15

defendant was able to provide reasons why the witnesses testified as they did.  (*Id.* at p. 383.)  As the court explained, "[T]he 'were they lying' questions were brief and were generally precursors to follow up questions as to whether defendant knew of any *reason* the witnesses had to lie."  (*Ibid*.)

Zambrano, supra, 124 Cal.App.4th 228 is directly on point. There, the prosecutor asked the defendant multiple "was he lying" questions and called the police officer in rebuttal to testify he was not lying and would likely be terminated if he lied during an investigation.  (*Id.* at pp. 234-235.)  The Court of Appeal concluded the questions constituted prosecutorial misconduct because they served no evidentiary purpose, and instead were used "to berate defendant before the jury and to force him to call the officers liars in an attempt to inflame the passions of the jury."  (*Id.* at p. 242.) The prosecutor's questioning of Ortiz similarly asked Ortiz merely to repeat his opinion that Deputy Fernandez was lying without providing any information on why Deputy Fernandez might lie. And, as in *Zambrano*, "[t]he misconduct was exacerbated when the prosecutor called [the officer] in rebuttal to testify that he was not lying and would not risk losing his job by lying."  (*Ibid*.)  Here, the prosecutor elicited from Deputy Fernandez that he would not jeopardize his job by lying because he had a family to feed. Further, as in *Zambrano*, the prosecutor raised Ortiz's inadmissible testimony in her closing argument to attack his credibility.  (See *ibid.* ["The misconduct was further compounded when the prosecutor revisited defendant's inadmissible testimony in her rebuttal closing argument."].)  Thus, the prosecutor "committed misconduct under state law" by using "a 'reprehensible method' to persuade the jury on the issue of defendant's and the officer's credibility."  (*Id.* at p. 243.)

16

However, the prosecutorial misconduct does not warrant reversal because it is not reasonably probable the jury would have reached a result more favorable to Ortiz had the misconduct not occurred. (*Gonzales and Soliz, supra*, 52 Cal.4th at p. 319; *Zambrano, supra*, 124 Cal.App.4th at p. 243.) The People presented Deputy Fernandez's testimony, photographs of the recovered gun, magazine, and ammunition (except for the ammunition recovered from Ortiz's pocket), and the *Miranda* waiver form on which Ortiz wrote, "The gun is mine." Ortiz's defense was based entirely on his testimony, which contradicted that of Deputy Fernandez in every pertinent respect.[7] Ortiz was unable to offer any explanation for why Deputy Fernandez had a motive to point a gun at Ortiz, plant evidence in his car, or forge his signature and initials on the *Miranda* waiver form. And Ortiz admitted he had three prior convictions, including for attempted carjacking and commercial burglary. Thus, even absent the improper "was he lying" questions, it is not reasonably probable the jury would have believed Ortiz's implausible version of events.

D. *The Trial Court Did Not Abuse Its Discretion in Excluding Unsubstantiated Allegations as Impeachment Evidence*

1. *Trial court proceedings*

Defense counsel sought to cross-examine Deputy Fernandez about a complaint made by Abraham Tinajero that was disclosed in response to Ortiz's *Pitchess*[8] motion. After the prosecutor

---

[7] As discussed, the court also admitted a photograph of the sale document on Ortiz's windshield, but Ortiz never challenged the lawfulness of the stop.

[8] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

objected, the trial court asked defense counsel for an offer of proof, and defense counsel stated, "[Tinajero] was driving in Huntington Park[.] He said two deputies stopped him[.] He was unable to recall the reason for the stop. Deputies asked him for his license registration, proof of insurance. He was asked to step out of the vehicle, after providing the documents to the deputy. The deputy searched, handcuffed and placed Mr. Tinajero in the backseat of the patrol car. . . . The officer spent about 30 minutes searching the vehicle." Defense counsel added, "The officers also searched his wallet during that time. The deputies threw a lot of Mr. Tinajero's property onto the hood of his vehicle during the search. When the deputies finished searching the vehicle, they released him and told him he was free to leave, and Mr. Tinajero discovered $100 missing from his wallet. [¶] After the deputies left the location, he filed the complaint with the sheriff's department in Lynwood, and, apparently, there was an investigation where Mr. Tinajero was . . . notified that the sheriff's investigation found no fault with the deputy regarding this complaint." Defense counsel argued she had good faith belief the incident did occur. But she acknowledged she would not be able to call Tinajero to testify because he was not in court and she did not subpoena him.

The court ruled, "[T]he implication, putting aside what the sheriff's department determined, what I heard you saying is . . . before the search, [Tinajero] had a hundred dollars and after the search, $100 was missing. [¶] . . . If true, I would concede . . . this is a crime of moral turpitude. My problem with this scenario is this hasn't been litigated. This hadn't been adjudicated so that the accusations have been established, and that hasn't happened. And I think we all know when it comes to impeachment, accusations alone isn't enough. [¶] So based on

18

your offer of proof, specifically what you said, it's also going to be denied." Defense counsel asked, "I'm not able to ask the deputy whether or not to his knowledge, he's been made aware of that people made complaints against him?" The court responded, "Yes. It is unduly prejudicial; under [Evidence Code section] 352, it's unfair to inquire about that when the basis of your questions are these unsubstantiated allegations."

2. *The trial court did not abuse its discretion*

"'The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' (Evid. Code, § 352.)." (*People v. Hardy* (2018) 5 Cal.5th 56, 87; accord, *People v. Bell* (2019) 7 Cal.5th 70, 105.) "'[T]he trial court is vested with wide discretion in determining relevance and in weighing the prejudicial effect of proffered evidence against its probative value. Its rulings will not be overturned on appeal absent an abuse of that discretion.'" (*Hardy*, at p. 87; accord, *Bell*, at p. 105.)

The trial court did not abuse its discretion in barring defense counsel from questioning Deputy Fernandez about Tinajero's allegations. As the court noted, Tinajero's allegations were not adjudicated, and Tinajero was not under subpoena to testify as to his version of events. Ortiz's reliance on *People v. Castain* (1981) 122 Cal.App.3d 138, 142-143 is misplaced. In *Castain*, the Court of Appeal concluded the trial court abused its discretion in excluding testimony from an individual who claimed the police officer who arrested the defendant for battery and resisting arrest had used excessive force on another occasion. (*Id.* at pp. 142-143.)

19

In contrast, defense counsel here sought to examine Deputy Fernandez, not Tinajero, about what Tinajero said in a hearsay document.

Likewise, the trial court's ruling did not violate Ortiz's confrontation rights under the Sixth and Fourteenth Amendments. *Delaware v. Van Arsdall* (1986) 475 U.S. 673, relied on by Ortiz, is inapposite. The United States Supreme Court in *Van Arsdall* held the trial court's exclusion of "*all* inquiry into the possibility that [the witness] would be biased as result of the State's dismissal of his pending public drunkenness charge" violated the defendant's rights under the Confrontation Clause. (*Id.* at p. 679.) As in *People v. Castain, supra*, 122 Cal.App.3d 138, the court in *Van Arsdall* considered the scope of examination of a percipient witness to show the witness's bias, not limitations on questioning about what a third person alleged the percipient witness had done.[9]

---

[9] Ortiz contends he suffered cumulative prejudice because the trial court violated his due process rights by denying his mistrial motion; the prosecutor committed misconduct in violation of his due process rights; and the trial court violated his confrontation rights by prohibiting him from cross-examining Deputy Fernandez about Tinajero's allegations. Because we reject Ortiz's claims of error (and conclude the "was he lying" questions were not prejudicial), there was no cumulative prejudice. (*People v. Powell* (2018) 6 Cal.5th 136, 194 [no cumulative prejudice where "[a]ny errors, actual or arguable, were minor"]; *People v. Edwards* (2013) 57 Cal.4th 658, 746 [no cumulative prejudice because there was no error, or if assuming error, there was no prejudice]; *People v. Tully* (2012) 54 Cal.4th 952, 1021-1023 [defendant did not suffer cumulative prejudice where there was no error or, if error, no individual prejudice].)

## DISPOSITION

The judgment is affirmed.

FEUER, J.

We concur:

PERLUSS, P. J.

SEGAL, J.